(No. 70542.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. BRUCE W. SIMMONS, Appellee.

*Opinion filed November 21, 1991.*

Kathleen Alling, State's Attorney, of Mt. Vernon, for the People.

Jerry Crisel, of Albion, for appellee.

JUSTICE CLARK delivered the opinion of the court:

The issue in this case is whether section 3—707 of the Illinois Vehicle Code is constitutional.

On March 16, 1990, defendant, Bruce W. Simmons, was issued a traffic citation charging him with operating an uninsured motor vehicle in violation of section 3—707 of the Illinois Vehicle Code (Ill. Rev. Stat. 1989, ch. 95½, par. 3—707). On July 16, 1990, at a hearing in the circuit court of Jefferson County, defendant argued that section 3—707 violated both the equal protection clause of the United States and the State of Illinois Constitutions and the eighth amendment of the United States Constitution. Defendant maintained that section 3—707 violated the equal protection clause because it discriminated against the "working poor," and violated the eighth amendment because the $500 minimum fine for a violation was excessive. The circuit court agreed with defendant's arguments, and held section 3—707 unconstitutional. A direct appeal was taken to this court

by the State pursuant to Supreme Court Rule 603 (134 Ill. 2d R. 603).

Section 3—707 states that no person shall operate a motor vehicle in Illinois unless the motor vehicle is covered by a liability insurance policy in accordance with section 7—601 of the Vehicle Code. (See Ill. Rev. Stat. 1989, ch. 95½, par. 3—707.) Further, anyone convicted of violating section 3—707 is guilty of a business offense and shall be required to pay a fine in excess of $500, but not more than $1,000. Ill. Rev. Stat. 1989, ch. 95½, par. 3—707.

In finding section 3—707 unconstitutional, the circuit court issued a written order declaring that the section violated the eighth amendment and the equal protection clause of the fourteenth amendment of the United States Constitution (U.S. Const., amends. VIII, XIV) and article I, sections 2 and 11, of the State of Illinois Constitution (Ill. Const. 1970, art. I, §§2, 11). We disagree, and find that section 3—707 neither denies the defendant equal protection of the laws, nor mandates an excessive fine.

The circuit court did not delineate the specific reasons why it held that section 3—707 violated the defendant's right to equal protection of the laws. However, the defendant argues in his brief to this court that section 3—707 violates equal protection because it "creates a classification based on wealth, or the lack of it, through its penalty provision which is uniquely excessive." As stated in *Jenkins v. Wu* (1984), 102 Ill. 2d 468, 477, "[t]he fourteenth amendment to the Federal Constitution requires equality between groups of persons 'similarly situated.' It does not deny a State the power to treat different classes of persons differently." (*Eisenstadt v. Baird* (1972), 405 U.S. 438, 446-47, 31 L. Ed. 2d 349, 358, 92 S. Ct. 1029, 1034-35; *People v. Mathey* (1983), 99 Ill. 2d 292, 296; *People v. Bradley* (1980), 79

Ill. 2d 410, 416.) In fact, in the absence of a fundamental right or suspect classification, the legislature may even differentiate between persons similarly situated if there is a rational basis for doing· so. (*Massachusetts Board of Retirement v. Murgia* (1976), 427 U.S. 307, 312-13, 49 L. Ed. 2d 520, 524, 96 S. Ct. 2562, 2566-67; *People ex rel. Difanis v. Barr* (1980), 83 Ill. 2d 191, 204; *Kujawinski v. Kujawinski* (1978), 71 Ill. 2d 563, 578.) This is the traditional equal protection analysis that has been used by this court in assessing both Federal and State equal protection challenges. (*Illinois Housing Development Authority v. Van Meter* (1980), 82 Ill. 2d 116, 121; *Kujawinski v. Kujawinski* (1978), 71 Ill. 2d 563, 578; *S. Bloom, Inc. v. Mahin* (1975), 61 Ill. 2d 70, 76.) Under this analysis, " '[a] classification "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." ' " *Eisenstadt v. Baird* (1972), 405 U.S. 438, 447, 31 L. Ed. 2d 349, 359, 92 S. Ct. 1029, 1035, quoting *Reed v. Reed* (1971), 404 U.S. 71, 76, 30 L. Ed. 2d 225, 229, 92 S. Ct. 251, 254.

In this case, as the State points out in its brief, section 3—707 does not violate the equal protection clause of either the United States Constitution or the State of Illinois Constitution because no classification is created based on wealth. Section 3—707 sets forth *the penalty* for violating section 7—601 of the Illinois Vehicle Code (Ill. Rev. Stat. 1989, ch. 95½, par. 7—601), which mandates that "no person shall operate, register or maintain registration of *** a motor vehicle *** unless the motor vehicle is covered by a liability insurance policy." (Ill. Rev. Stat. 1989, ch. 95½, par. 7—601(a).) The prescribed penalty, a fine in excess of $500, but not more than $1,000, is the same for all offenders without re-

gard to any particular characteristic of the individual offender. Thus, no classification based on wealth is created in section 3—707, and the defendant's equal protection challenge consists merely of an allegation that the $500 penalty may cause an economic hardship on certain citizens in the State of Illinois. While we have no doubt that the $500 fine for violating the mandatory liability insurance requirement will have a much greater financial impact on those persons who, as the defendant describes, are the "working poor," this disparity in economic impact does not give rise to an equal protection violation. Moreover, under the defendant's argument, any penalty provision in section 3—707 would violate equal protection.

We also disagree with the defendant's claim that the $500 penalty also violates the eighth amendment to the United States Constitution and article I, section 11, of the State of Illinois Constitution. The eighth amendment to the United States Constitution provides: "Excessive bail shall not be required, *nor excessive fines imposed,* nor cruel and unusual punishments inflicted." (Emphasis added.) (U.S. Const., amend. VIII.) In somewhat different language, article I, section 11, of the State of Illinois Constitution reads:

> "*All penalties shall be determined both according to the seriousness of the offense* and with the objective of restoring the offender to useful citizenship. No conviction shall work corruption of blood or forfeiture of estate. No person shall be transported out of the State for an offense committed within the State." (Emphasis added.) Ill. Const. 1970, art. I, §11.

The legislature has the power to declare and define conduct constituting a crime and to determine the nature and extent of punishment for it. (*People v. Taylor* (1984), 102 Ill. 2d 201, 205; *People v. La Pointe* (1981), 88 Ill. 2d 482, 500; *People v. Williams* (1977), 66

Ill. 2d 179, 186.) While this court acknowledges that article I, section 11, of the State of Illinois Constitution places some restraint on the right of the legislature to establish penalties for crimes, we have been reluctant to invalidate penalties prescribed by the legislature. (See *People v. Steppan* (1985), 105 Ill. 2d 310, 319.) "The legislature, institutionally, is more aware than the courts of the evils confronting our society and, therefore, is more capable of gauging the seriousness of various offenses." (*Steppan*, 105 Ill. 2d at 319.) Legislative classifications are presumed valid (*Taylor*, 102 Ill. 2d at 205), and this court will invalidate a penalty only when it is clearly irrational (*People v. Wisslead* (1985), 108 Ill. 2d 389, 399). More precisely, in evaluating a penalty prescribed by the legislature, this court:

> "indicated at an early date that the constitutional command that 'penalties shall be proportioned to the nature of the offense' would justify interference with the legislative judgment only if the punishment was 'cruel,' 'degrading' or 'so wholly disproportionate to the offense committed as to shock the moral sense of the community.' " *People v. Gonzales* (1962), 25 Ill. 2d 235, 240, citing *People ex rel. Bradley v. Illinois State Reformatory* (1894), 148 Ill. 413, 421.

In terms of the $500 minimum fine set out in section 3—707, we do not believe that it is "cruel," "degrading" or so "wholly disproportionate to the offense committed as to shock the moral sense of the community." As the State explains in its brief, in a time of escalating medical costs and expenses to repair automobiles and property damage, it was well within the province of the legislature to determine that operating a motor vehicle without liability insurance is a sufficiently serious offense to be punished by a $500 fine. Further, although the $500 minimum fine may seem quite burdensome to many individuals, it was explained during legislative de-

bates on this issue that a fine this size was necessary to insure compliance with the statute. Representative Laurino stated that $500 was selected as the amount because it would be slightly greater than the cost of procuring the liability insurance. Thus, the fine would act as a deterrent to those drivers who might opt to flout the law if the fine was less than the cost of procuring the liability insurance. (See 85th Ill. Gen. Assem., House Proceedings, May 18, 1988, at 127 (statements of Representative Laurino).) We must agree.

The defendant argues that the $500 minimum fine for operating a vehicle without liability insurance is excessive when compared to other offenses in the criminal code. Specifically, the defendant claims that battery (see Ill. Rev. Stat. 1989, ch. 38, par. 12—3), criminal damage to property (see Ill. Rev. Stat. 1989, ch. 38, par. 21—1), and reckless driving (see Ill. Rev. Stat. 1989, ch. 95½, par. 11—503) are all more serious offenses than driving an uninsured motor vehicle, and yet the penalties for violating the aforementioned offenses are far less than a $500 minimum fine.

As we noted earlier, whether driving a motor vehicle without liability insurance is less serious than say, battery, criminal damage to property, or reckless driving, that is a determination to be made by the legislature. (See *Steppan*, 105 Ill. 2d at 319 (stating that the legislature, institutionally, is more capable of gauging the seriousness of various offenses).) However, the exact penalties for violating the aforementioned offenses belie the defendant's argument that they are punished less severely than driving without liability insurance. The above-mentioned offenses are classified, generally, as Class A misdemeanors, which carry with them *a fine up to $1,000* or the amount specified in the offense (see Ill. Rev. Stat. 1989, ch. 38, par. 1005—9—1(a)(2)), and, more importantly, *a sentence of imprisonment of up to*

*one year* (see Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—3(a)(1)). Generally, offenses which carry with them penalties of imprisonment are considered more serious than those which authorize only fines. As stated in *Solem v. Helm* (1983), 463 U.S. 277, 294 n.18, 77 L. Ed. 2d 637, 652 n.18, 103 S. Ct. 3001, 3012 n.18, there is a clear line between sentences of imprisonment and sentences involving no deprivation of liberty. (See also *Baldwin v. New York* (1970), 399 U.S. 66, 73, 26 L. Ed. 2d 437, 443, 90 S. Ct. 1886, 1890 ("the prospect of imprisonment for however short a time will seldom be viewed by the accused as a trivial or 'petty' matter and may well result in quite serious repercussions affecting his career and his reputation").) Driving without liability insurance is classified as a business offense, which by definition means an offense punishable by fine only. (See Ill. Rev. Stat. 1989, ch. 38, par. 1005—1—2.) Given that battery, criminal damage to property, and reckless driving are offenses subject to terms of imprisonment and a fine up to $1,000, the defendant's argument that they are punished less severely than failure to obtain liability insurance is not persuasive.

For the foregoing reasons, the decision of the circuit court is reversed, and the cause remanded.

*Reversed and remanded.*