(No. 76151.—

(No. 76531.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. ROB D. BAILEY, Appellee.—THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. ALLEN COYNE, Appellant.

*Opinion filed October 19, 1995.*

HEIPLE, J., joined by HARRISON, J., concurring in part and dissenting in part.

Roland W. Burris, Attorney General, of Springfield, and James W. Glassgow, State's Attorney, of Joliet (Rosalyn B. Kaplan, Solicitor General, and Arleen C. Anderson and Steven J. Zick, Assistant Attorneys General, all of Chicago, of counsel), for the People.

Edward A. Burmila, Jr., and Charles E. Thomas, of Burmila & Thomas, P.C., of Joliet, for appellee.

Rita A. Fry, Public Defender, of Chicago (James N. Perlman, Assistant Public Defender, of counsel), for appellant.

Roland W. Burris, Attorney General, of Springfield, and Jack O'Malley, State's Attorney, of Chicago (Arleen C. Anderson, Assistant Attorney General, of Chicago, and Renee G. Goldfarb and Kenneth T. McCurry, Assistant State's Attorneys, of counsel), for the People.

JUSTICE MILLER delivered the opinion of the court:

In these consolidated appeals, we are presented with the question of the constitutionality of the stalking and aggravated stalking statutes. (720 ILCS 5/12—7.3, 12—7.4 (West 1992).) In cause No. 76531, defendant, Allen Coyne, also challenges the constitutionality of section 110—6.3 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110—6.3 (West 1992)), the denial of bail provisions in stalking and aggravated stalking offenses. For the reasons that follow, we uphold the constitutionality of the stalking and aggravated stalking statutes and section 110—6.3 of the Code.

# I. BACKGROUND

Cause No. 76151

In cause No. 76151, defendant, Rob D. Bailey, was charged in June 1993 by indictment in the circuit court of Will County with the offense of stalking. (720 ILCS 5/12—7.3 (West 1992).) The basis for the indictment was that on April 1, 1993, defendant Bailey (Bailey) threatened Richard E. Bailey (Richard), Bailey's brother, by stating, "[M]aybe I'll just blow you and your whole family away." This threat was alleged to have been made with the intent to place Richard in reasonable apprehension of death or bodily harm.

The State also alleged that in furtherance of the threat Bailey placed Richard under surveillance by parking across the street from Richard's home for approximately five minutes at 11 a.m. on April 30, 1993. The State additionally alleged that in furtherance of the threat Bailey followed Richard from St. Joseph Medical Center, where both Bailey and Richard worked, to Richard's home at midnight on June 6, 1993. Bailey drove the same route as Richard until the intersection of Midland and Delmar Streets, where Bailey continued on Midland while Richard turned. On the way to Richard's home, Bailey drove about 15 to 20 feet directly behind Richard's vehicle and changed lanes when Richard changed lanes.

Prior to trial, the trial judge, on Bailey's motion, ruled that the stalking statute was unconstitutional because it: (1) failed to define the term "follows" or the phrase "in furtherance of," thereby rendering the statute vague as to what conduct was unlawful; (2) failed to contain the language "without lawful authority," thereby ignoring that certain threats may be legal, and thus making innocent conduct unlawful; (3) exempted the act of picketing during *bona fide* labor disputes without any compelling State reason and was vague in

that "bona fide labor disputes" was not defined; and (4) gave unfettered discretion to prosecutors in charging violations of the stalking statute, effectively revoking the assault and disorderly conduct statutes (720 ILCS 5/12—1, 26—1(a)(1) (West 1992)). The State appealed the trial judge's ruling directly to this court pursuant to Supreme Court Rule 603. 134 Ill. 2d R. 603.

Cause No. 76531

In cause No. 76531, defendant Coyne was charged in June 1993 by a two-count indictment in the circuit court of Cook County with the offenses of stalking and aggravated stalking. (720 ILCS 5/12—7.3, 12—7.4 (West 1992).) The indictment alleged that on September 19, 1992, Coyne threatened Mary Ann Michalski with the intent to place her in reasonable apprehension of bodily harm. It was also asserted that in furtherance of the threat Coyne knowingly placed Michalski under surveillance on December 8, 1992, and followed her on January 7, 1993. This conduct was further alleged to have violated an order of protection.

Coyne was subsequently taken into custody and held without bail. The State then filed a petition to deny bail under section 110—6.3 of the Code (725 ILCS 5/110—6.3 (West 1992)). In its petition, the State alleged that Coyne's admission to bail posed a real and present threat to the physical safety of Michalski and that denial of release on bail or personal recognizance was necessary to prevent the fulfillment of Coyne's threat. On the same day the State's motion was filed, Coyne filed a motion to declare section 110—6.3 unconstitutional. Following a hearing, the trial judge granted the State's motion to deny bail and denied Coyne's motion to declare section 110—6.3 of the Code unconstitutional. Coyne was thereafter held in custody without bail.

At trial, Michalski testified that she and Coyne began dating in August 1990, and that she moved in

with him in May 1991. They lived together until September 1991, when Michalski terminated the relationship by moving out. Michalski also testified to the incidents alleged in the indictment. She testified that on September 19, 1992, she received a series of phone calls from Coyne. During one phone call, Coyne indicated that it was time for her "to kiss [her] children goodbye because he was going to come and blow [her] away." Michalski interpreted Coyne's statement to mean that he was going to kill her. After she reported the incident to the police, a police officer came to her apartment, and she made out a police report. While the officer was there, the phone continued to ring. The officer answered the phone, identified himself, but received no response.

On December 8, 1992, at 8:45 p.m., Michalski observed Coyne standing on her patio and looking inside her apartment through the patio window. Michalski immediately phoned the police. While she was reporting the incident, Coyne ran to a vehicle and drove off. Michalski was able to give the police a description of the vehicle, and Coyne was subsequently arrested.

On January 7, 1993, Michalski was at the Bridgeview courthouse for a hearing on Coyne's violation of probation. A continuance was given in the case, and Michalski immediately left the courtroom. While in the parking lot, Michalski was shoved from behind. She turned around, and Coyne was standing behind her with a grin on his face. Coyne told Michalski that she was "not even going to make it to [her] birthday." Coyne's next court appearance was scheduled for that date. After getting into her girlfriend's truck, Michalski observed Coyne write the license plate number on his hand.

It was uncontested at trial that a valid order of protection was in effect at the time of each of the incidents Michalski described in her testimony.

Beverly Osterman testified that she drove Michalski to the Bridgeview courthouse on January 7, 1993. Osterman's testimony essentially corroborated Michalski's testimony regarding the incident between Michalski and Coyne at the courthouse. Osterman testified that Michalski almost fell after entering the parking lot at the courthouse and that Coyne was standing about six inches behind Michalski. Osterman further corroborated Michalski's testimony that Coyne told her that she would not live to see her next birthday.

Coyne testified on his own behalf. He denied following Michalski out of the courthouse on January 7, 1993. He also denied that he said anything to her or that he pushed her. He admitted seeing her in the parking lot, but asserted that he was 10 to 12 feet away from her. In support of this testimony, Coyne offered the testimony of Albert Falk and James McFarland.

Falk testified that he was in the courtroom on June 9, 1993. He stated that Coyne remained in the courtroom for several minutes after Michalski left. Falk observed that Michalski returned to the courtroom 10 to 15 minutes after Coyne left, claiming that she had been assaulted. On cross-examination, Falk admitted that he did not observe what Coyne did after he left the courtroom.

McFarland testified that he drove Coyne to the Bridgeview courthouse on January 7, 1993. McFarland dropped Coyne off at the front of the courthouse and observed Coyne enter the building. He then parked the car in the courthouse parking lot and remained in the car reading a newspaper. McFarland testified that approximately 45 minutes later he looked up from his newspaper and observed Coyne enter the parking lot. McFarland testified that he did not observe Coyne push or speak with anyone. On cross-examination, he admitted that he did not know whether Coyne had been in the parking lot prior to the time that he saw him.

Coyne also denied that the events Michalski described in her testimony ever occurred. He further stated that he never placed her in apprehension of bodily harm, nor recalled saying anything to her that would cause her to be in apprehension of bodily harm. Coyne also asserted that he drove Michalski to the hospital in February 1992, and stayed with her for 10 hours. He then took Michalski to get a prescription for lithium filled. Coyne also stated that he spent Easter weekend in 1992 with Michalski in Chicago. He maintained that Michalski had won a complimentary hotel room from a radio station, but that he paid for the amenities with his credit card. Coyne further stated that he last went out socially with Michalski on June 17, 1992, although they had stopped living together in September 1991. He also testified that from the time they stopped living together until June 12, 1992, he spent at least five nights a week at Michalski's apartment.

Richard Christianson also testified for the defense. He stated that he was with Coyne at a tavern on December 8, 1992, the night Coyne was alleged to have placed Michalski under surveillance. He maintained that they arrived at 7 p.m., and he last saw Coyne shortly before 9 p.m. At that time, Coyne told Christianson he was leaving to go to a restaurant that closed at 9 p.m. On cross-examination, Christianson admitted that he did not know where Coyne went after he left the bar.

In rebuttal, Michalski admitted that she went to the hospital in February 1992, but denied that Coyne drove her to the hospital or visited her there. She further denied spending Easter weekend in 1992 with Coyne and denied that she went out with him on June 17, 1992. She also asserted that Coyne never spent the night at her apartment between the time they stopped living together and June 17, 1992. She further denied having a prescription for lithium filled.

Coyne was thereafter convicted of stalking and aggravated stalking. The trial judge found that the stalking conviction merged into the aggravated stalking conviction. The trial judge therefore entered judgment only on the aggravated stalking conviction. Coyne's motion for a new trial was denied. He was subsequently sentenced to six months' imprisonment, with credit for six months served, and two years' probation. We granted Coyne's request for direct appeal to this court and consolidated his appeal with the State's appeal in cause No. 76515. 134 Ill. 2d R. 302(b).

## II. DISCUSSION

We begin our discussion with the pertinent statutes. The stalking statute in effect at the time both defendants were charged provided:

"(a) A person commits stalking when he or she transmits to another person a threat with the intent to place that person in reasonable apprehension of death, bodily harm, sexual assault, confinement or restraint, and in furtherance of the threat knowingly does any one or more of the following acts on at least 2 separate occasions:

(1) follows the person, other than within the residence of the defendant;

(2) places the person under surveillance by remaining present outside his or her school, place of employment, vehicle, other place occupied by the person, or residence other than the residence of the defendant.

(b) Sentence. Stalking is a Class 4 felony. A second or subsequent conviction for stalking is a Class 3 felony.

(c) Exemption. This Section does not apply to picketing occurring at the workplace that is otherwise lawful and arises out of a bona fide labor dispute." 720 ILCS 5/12—7.3 (West 1992).

In addition, Coyne was charged with the offense of aggravated stalking. The aggravated stalking statute under which Coyne was charged provided:

"(a) A person commits aggravated stalking when he or

she, in conjunction with committing the offense of stalking, also does any of the following:

(1) causes bodily harm to the victim;

(2) confines or restrains the victim; or

(3) violates a temporary restraining order, an order of protection, or an injunction prohibiting the behavior described in subsection (b)(1) of Section 214 of the Illinois Domestic Violence Act of 1986.

(b) Sentence. Aggravated stalking is a Class 3 felony. A second or subsequent conviction for aggravated stalking is a Class 2 felony.

(c) Exemption. This Section does not apply to picketing occurring at the workplace that is otherwise lawful and arises out of a bona fide labor dispute." 720 ILCS 5/12—7.4 (West 1992).

Both statutes have been amended twice since defendants were charged. The first amendments were effective August 20, 1993 (see 720 ILCS 5/12—7.3, 12—7.4 (West Supp. 1993)); the second amendments were effective December 15, 1994 (see 720 ILCS 5/12—7.3, 12—7.4 (West 1994)). In this appeal, however, we are called upon to only consider the constitutionality of the statutes in effect at the time the defendants were charged.

## A. Overbreadth

Both defendants in this consolidated appeal argue that the stalking statute is facially overbroad and therefore unconstitutional because it fails to contain the language "without lawful authority." Citing *People v. Wick* (1985), 107 Ill. 2d 62, defendants contend that the absence of such language in the statute makes innocent conduct unlawful and therefore violates that guarantee of due process. (Ill. Const. 1970, art. I, § 2.) To demonstrate, defendants set forth several hypothetical situations in which they contend the statute proscribes innocent conduct. Coyne also argues that the statute is overbroad because by not requiring that the threat create a reasonable apprehension of imminent harm in the

victim or incite imminent lawless action the statute reaches constitutionally protected speech. See *Chaplinsky v. New Hampshire* (1942), 315 U.S. 568, 86 L. Ed. 1031, 62 S. Ct. 766; *Hess v. Indiana* (1973), 414 U.S. 105, 38 L. Ed. 2d 303, 94 S. Ct. 326; *Lewis v. City of New Orleans* (1974), 415 U.S. 130, 39 L. Ed. 2d 214, 94 S. Ct. 970; *Gooding v. Wilson* (1972), 405 U.S. 518, 31 L. Ed. 2d 408, 92 S. Ct. 1103.

We first consider whether the stalking statute violates due process by punishing innocent behavior. In *Wick*, this court held that the former aggravated arson statute (Ill. Rev. Stat. 1981, ch. 38, par. 20—1.1(a)(3)) violated due process because it did not bear a reasonable relationship to the public interest intended to be protected. (*Wick*, 107 Ill. 2d at 67.) This court noted that the purpose of the statute was to subject arsonists to a more severe penalty when their conduct resulted in injury to a fire fighter or police officer. This court found, however, that the statute was not reasonably related to that objective because the statute did not require an unlawful purpose in setting the fires. The statute therefore swept too broadly by punishing innocent as well as culpable conduct in setting fires. *Wick*, 107 Ill. 2d at 66.

While the stalking and aggravated stalking statutes do not contain the phrase "without lawful authority," we interpret the statutes as proscribing only conduct performed "without lawful authority." This construction of the statutes is not strained. Rather, it accords with the legislature's intent in enacting the statutes to prevent violent attacks by allowing the police to act before the victim was actually injured and to prevent the terror produced by harassing actions. (See *People v. Holt* (1995), 271 Ill. App. 3d 1016, 1021; *People v. Krawiec* (1994), 262 Ill. App. 3d 152, 160.) By construing the statutes to proscribe only conduct performed

"without lawful authority," the possibility that the statutes reach innocent conduct is also avoided.

Moreover, this interpretation of the statutes is consistent with and furthers three important rules: (1) a court must ascertain and give effect to the legislature's intent in enacting the statute (*Collins v. Board of Trustees of the Firemen's Annuity & Benefit Fund* (1993), 155 Ill. 2d 103, 110); (2) in construing a statute, this court has a duty to affirm the statute's validity and constitutionality if reasonably possible (*Collins*, 155 Ill. 2d at 110; *People v. Shephard* (1992), 152 Ill. 2d 489, 499); and (3) an interpretation that renders a statute valid is always presumed to have been intended by the legislature (*Harris v. Manor Healthcare Corp.* (1986), 111 Ill. 2d 350, 363). Additionally, the stalking statute has been amended to include the phrase "without lawful justification." (See 720 ILCS 5/12—7.3 (West 1994).) The inclusion of this language in amendments to the stalking statute is a further indication that the legislature intended the statutes to only punish conduct committed "without lawful authority."

Given our interpretation of the stalking statutes, the statutes do not contain the same infirmity that existed in the aggravated arson statute in *Wick*. We do not believe threatening a person ·with the requisite intent and in furtherance of the threat following or placing a person under surveillance without lawful authority involves any "innocent conduct." Moreover, we believe that the stalking and aggravated stalking statutes' proscriptions are reasonably related to the goal of protecting possible victims of stalking and aggravated stalking. (See *People v. Anderson* (1992), 148 Ill. 2d 15, 27.) Further, the fact that the statutes at issue here can be interpreted to punish only unlawful conduct distinguishes this case from those where such an interpretation was not possible. See *People v. Zaremba* (1994), 158

Ill. 2d 36, 42; *Wick*, 107 Ill. 2d at 67; *cf. People v. Tolliver* (1992), 147 Ill. 2d 397; *People v. Gean* (1991), 143 Ill. 2d 281; see also *Woolfolk v. Commonwealth* (1994), 18 Va. App. 840, 850-52, 447 S.E.2d 530, 536.

We next consider Coyne's argument that the stalking statute is facially overbroad because it reaches speech protected by the first amendment. The doctrine of overbreadth is designed to protect first amendment freedom of expression from laws written so broadly that the fear of punishment might discourage people from taking advantage of the freedom. (*Anderson*, 148 Ill. 2d at 26; *Broadrick v. Oklahoma* (1973), 413 U.S. 601, 611-12, 37 L. Ed. 2d 830, 839-40, 93 S. Ct. 2908, 2915-16.) Nevertheless, the doctrine is used sparingly, and in order for a statute to be invalidated for overbreadth, its overbreadth "must not only be real, but substantial as well." (*Broadrick*, 413 U.S. at 615, 37 L. Ed. 2d at 842, 93 S. Ct. at 2918.) Moreover, one may challenge a statute as overbroad only if the statute is one that may inhibit the exercise of rights of expression or association protected by the first amendment. *Broadrick*, 413 U.S. at 611-12, 37 L. Ed. 2d at 839-40, 93 S. Ct. at 1915-16; *People v. Haywood* (1987), 118 Ill. 2d 263, 275.

In addressing a facial overbreadth challenge, the first task is to determine whether the statute reaches constitutionally protected conduct. Here, defendant only argues that the statute reaches constitutionally protected speech. In viewing the stalking statute, it is clear that defendant's facial overbreadth argument fails because the stalking statute does not impinge on any constitutionally protected right of free speech or any other fundamental constitutional right. *People v. Russell* (1994), 158 Ill. 2d 23, 25-26.

For defendant to be convicted of stalking, the State must prove that defendant threatened the victim "with the intent to place that person in reasonable apprehen-

sion of death, bodily harm, sexual assault, confinement or restraint." In furtherance of the threat, the State must also prove that defendant followed the victim or placed the victim under surveillance on at least two separate occasions. Moreover, as previously explained, the statute was intended to only punish that conduct performed without lawful authority. With the enactment of the stalking statute, we find that the legislature only sought to prohibit conduct that was not constitutionally protected. While the offense of stalking does contain an element of speech, this speech does not fall within the protections of the first amendment. "Where speech is an integral part of unlawful conduct, it has no constitutional protection." (*Chicago Real Estate Board v. City of Chicago* (1967), 36 Ill. 2d 530, 552-53; see also *Giboney v. Empire Storage & Ice Co.* (1949), 336 U.S. 490, 502, 93 L. Ed. 834, 843-44, 69 S. Ct. 684, 691 ("it has never been deemed an abridgment of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed"); *Cox v. Louisiana* (1965), 379 U.S. 536, 555-56, 13 L. Ed. 2d 471, 484-85, 85 S. Ct. 453, 464-65; *People v. Williams* (1990), 133 Ill. 2d 449, 456-57; see, *e.g., People v. Calvert* (1994), 258 Ill. App. 3d 504, 511; *People v. Blackwood* (1985), 131 Ill. App. 3d 1018, 1024; *People v. Lewis* (1980), 84 Ill. App. 3d 556, 561-62; *People v. Johnson* (1978), 60 Ill. App. 3d 183, 188-89.) The element of a threat in the stalking statute is an integral part of the offense. The offense cannot be committed without the initiation of the threat because the following and surveillance requirements can only be met after a threat has been made. We therefore conclude that the element of speech in the stalking statute is not constitutionally protected. Moreover, because the statute only encompasses activities performed without lawful author-

ity, we find that it does not implicate any other constitutionally protected activity. See *Holt*, 271 Ill. App. 3d at 1027-28.

## B. Vagueness

In cause No. 76151, the State challenges the trial judge's ruling that the stalking statute was unconstitutionally vague because it failed to define the term "follows" or the phrase "in furtherance of." The State argues that the stalking statute is sufficiently definite to proscribe the conduct defendant Bailey was charged with committing. The State therefore contends that the statute withstands a vagueness challenge, and the trial court erred in ruling otherwise.

In contrast, Bailey contends that the stalking statute is unconstitutionally vague in violation of due process (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2) because it fails to define the term "follows" or the phrases "remaining outside [the victim's] *** residence" and "in furtherance of." As a result, Bailey maintains that the statute fails to give adequate notice of what conduct is proscribed and results in an arbitrary and discriminatory application of the statute. Bailey contends that the disputed statute is not only facially vague, but also vague as applied to him.

To prevail on a vagueness challenge to a statute that does not implicate first amendment concerns, a party must demonstrate that the statute was vague as applied to the conduct for which the party is being prosecuted. (*Russell*, 158 Ill. 2d at 25-26; *People v. Jihan* (1989), 127 Ill. 2d 379, 386; *People v. Ryan* (1987), 117 Ill. 2d 28, 34.) We first review Bailey's assertion that the statute did not give him fair warning of what conduct was prohibited. Central to this inquiry is that " 'the statute must give a person of ordinary intelligence a reasonable opportunity to know what conduct is lawful and what conduct is unlawful.' " *Anderson*, 148 Ill. 2d at 27-28,

quoting *People v. Bales* (1985), 108 Ill. 2d 182, 188; see also *People v. Taylor* (1990), 138 Ill. 2d 204, 211.

To commit the offense of stalking, the statute requires that in furtherance of a threat the defendant follow the victim or place the victim under surveillance on at least two separate occasions. The term "follows" is not defined in the statute. Bailey contends that "follows" is susceptible to a variety of meanings and, therefore, the term is vague. In the absence of a statutory definition, courts will assume that statutory words have their ordinary and popularly understood meanings. *Anderson*, 148 Ill. 2d at 28.

Webster's defines "follow" to mean "to go, proceed, or come after" and "to go after in pursuit or in an effort to overtake." (Webster's Third New International Dictionary 883 (1986).) Because the following must be in furtherance of a threat, the term "following" must have an element of pursuit to it. Thus, it does not encompass aimless, unintentional, or accidental conduct. The term "following" does imply a proximity in space as well as time. Whether a person has maintained sufficient visual or physical proximity to fall within the purview of the stalking statute will depend on a variety of factors in each case. These are appropriate issues for the trier of fact. (See *People v. Culmo* (1993), 43 Conn. Supp. 46, 63-64, 642 A.2d 90, 98-99.) As this court has consistently held, impossible levels of specificity are not required. The only requirement is that the statute convey sufficiently definite warnings that can be understood when measured by common understanding and practices. *Haywood*, 118 Ill. 2d at 269; *People v. Caffrey* (1983), 97 Ill. 2d 526, 530.

The statute at issue also requires that the following or surveillance be "in furtherance of" the threat. The phrase "in furtherance of" is also not defined in the statute. By its terms, however, it only requires that the offending acts be "in furtherance of" the threat. To "further" something means to "help forward," "promote,"

or "advance." (Webster's Third New International Dictionary 924 (1986).) There is no requirement that the conduct actually result in or produce the threatened violence. It would be sufficient if the conduct was committed with the intent to promote or reinforce the threat previously issued to the victim. See *Krawiec*, 262 Ill. App. 3d at 160.

The statute also requires that the defendant place the victim under surveillance "by remaining present outside [the victim's] *** residence." As this phrase is used to define the act of surveillance, it means that the surveillance must be done outside of the victim's home, other than the defendant's home. Like the term "follows," the phrase "outside [the victim's] *** residence" has an element of proximity, but this does not render the phrase vague.

We find no merit to Bailey's argument that the statutory language is unconstitutionally vague as applied to his situation. We believe that statute's terms are sufficiently clear that Bailey could have understood that his conduct, if the allegations in the indictment are proved, fell within the proscriptions of the statute. While some ambiguities may exist in the wording of the statute, they are not sufficient to render its meaning vague to a person of common intelligence. Thus, we hold that the statute is not unconstitutionally vague as applied to Bailey's conduct.

Moreover, we find that the statute's proscriptions convey sufficiently clear standards as to avoid its arbitrary enforcement. Stalking charges may only be brought when a defendant has threatened a victim with the requisite intent and then follows or places the victim under surveillance on at least two occasions. The language of the statute is narrow enough that the police have little discretion in deciding what conduct constitutes stalking. We therefore find that the stalking stat-

ute does not promote arbitrary enforcement and is not unconstitutionally vague. Moreover, we conclude that Bailey lacks standing to raise a facial challenge to the statute because the statute does not implicate first amendment rights and because Bailey's conduct clearly falls within the proscription of the statute. *Jihan*, 127 Ill. 2d at 386; *People v. Garrison* (1980), 82 Ill. 2d 444, 454.

## C. Picketing Exemption

In Bailey's case, cause No. 76151, the trial judge also found that the stalking statute was unconstitutional because it exempted the act of picketing during "bona fide labor disputes" without any compelling State reason and was also vague in that the phrase "bona fide labor disputes" was not defined. The State challenges the trial judge's ruling.

Illinois courts use two standards to review equal protection claims. Courts apply strict scrutiny to "suspect" classifications, such as those based on race, and to classifications that impinge on fundamental constitutional rights. (*Shephard*, 152 Ill. 2d at 499.) A law that does not implicate either a suspect classification or a fundamental right is subject to rational basis review. Under the rational basis test, a statutory classification need only be rationally related to a legitimate State goal. *Shephard*, 152 Ill. 2d at 500; *People v. Reed* (1992), 148 Ill. 2d 1, 7-8.

Citing *Carey v. Brown* (1980), 447 U.S. 455, 65 L. Ed. 2d 263, 100 S. Ct. 2286, Bailey argued in the trial court that the picketing exemption was unconstitutional. At issue in *Carey* was the constitutionality of an Illinois statute that prohibited picketing of residences or dwellings, but exempted from its prohibition "peaceful picketing of places of employment involved in a labor dispute." In determining whether the statute was unconstitutional, the Supreme Court noted that "[w]hen govern-

ment regulation discriminates among speech-related activities in a public forum, the Equal Protection Clause mandates that the legislation be finely tailored to serve substantial state interests, and the justifications offered for any distinctions it draws must be carefully scrutinized." *Carey*, 447 U.S. at 461-62, 65 L. Ed. 2d at 270, 100 S. Ct. at 2290-91.

The statute in *Carey* was ultimately found to violate the equal protection clause because it discriminated among picketers on the basis of the subject matter of their speech. To the extent that Coyne argues that the picketing exemption unconstitutionally discriminates against picketing at a workplace during a "bona fide labor dispute" and picketing occurring elsewhere, we find that Bailey lacks standing to make such an argument. " 'A party has standing to challenge the constitutionality of a statute only insofar as it has an adverse impact on his own rights.' " (*People v. Capitol News, Inc.* (1990), 137 Ill. 2d 162, 168, quoting *County Court of Ulster County, New York v. Allen* (1979), 442 U.S. 140, 154-55, 60 L. Ed. 2d 777, 790, 99 S. Ct. 2213, 2223; see also *People v. Blackorby* (1992), 146 Ill. 2d 307, 320-21.) Because Coyne is not a member of a picketing class affected by the exemption, he cannot argue that the exemption unconstitutionally discriminates between different classes of picketers based on the content of their speech. Coyne's argument is therefore reduced to whether the stalking statute unconstitutionally discriminates between picketing at a workplace during a "bona fide labor dispute" and nonpicketers. Because such a classification does not impinge on a fundamental right or discriminate against a suspect class, the standard for judgment of the exemption is therefore the relatively relaxed rational basis standard. *People v. P.H.* (1991), 145 Ill. 2d 209, 229.

To determine whether a statutory classification is

justified by a rational basis, we must examine its purpose. (*Reed*, 148 Ill. 2d at 9.) The legislative intent in enacting the stalking statute was to prevent violent attacks by prohibiting conduct that may precede them. Legislators in both houses maintained that the statute was necessary because existing laws did not allow police to act until the victim was actually injured. (See 87th Ill. Gen. Assem., Senate Proceedings, May 21, 1992, at 61 (statements of Senator Adeline Geo-Karis); 87th Ill. Gen. Assem., Senate Proceedings, June 22, 1992, at 66 (statements of Senator Carl Hawkinson); 87th Ill. Gen. Assem., House Proceedings, May 20, 1992, at 69, 71-72 (statements of Representative Thomas Homer); 87th Ill. Gen. Assem., House Proceedings, June 26, 1992, at 156 (statements of Representative Homer); 87th Ill. Gen. Assem., House Proceedings, May 20, 1992, at 73 (statements by Representative Homer); 87th Ill. Gen. Assem., Senate Proceedings, June 22, 1992, at 66 (statements by Senator Hawkinson).) The statute was also intended to avert the terror, intimidation, and justifiable apprehension caused by the stalker's conduct. *Holt*, 271 Ill. App. 3d at 1021; *Krawiec*, 262 Ill. App. 3d at 160; O'Reilly, *Illinois' Stalking Statute: Taking Unsteady Aim at Preventing Attacks*, 26 J. Marshall L. Rev. at 821, 835 (1993).

We find that a rational basis exists for exempting picketing during a *bona fide* labor dispute from the purview of the statute. The State has a legitimate interest in protecting people from physical injury, and it is reasonable to conclude that the conduct the legislature was trying to combat was not the type of conduct that occurs during picketing. It is also rational to conclude that the legislature exempted picketing during *bona fide* labor disputes in an effort to ensure that constitutionally protected activity would not be punished. It therefore was rational for the legislature to exempt this

conduct. Because a rational basis exists for the exemption, the stalking statute does not violate equal protection.

The State also challenges the trial judge's ruling that the stalking statute was unconstitutional because the phrase "bona fide labor disputes" was not defined. Because Bailey did not claim that his asserted conduct fell within the scope of the picketing exemption, nor is there any conduct which would give rise to application of the exemption, Bailey lacks standing to challenge whether the exemption's language was vague. The trial court therefore erred in considering this constitutional issue. *Blackorby*, 146 Ill. 2d at 320-21; *Capitol News*, 137 Ill. 2d at 169-70.

### D. Proportionate Penalty

We next consider whether the stalking statute violates the proportionate penalties clause of our State constitution. (Ill. Const. 1970, art. I, § 11.) In cause No. 76151, the trial judge found that the stalking statute was unconstitutional because it gave unfettered discretion to prosecutors in charging violations of the statute, thereby nullifying the assault and disorderly conduct statutes (720 ILCS 5/12—1, 26—1(a)(1) (West 1992)). The trial judge believed that the stalking statute combined conduct already prohibited by the disorderly conduct and assault statutes, yet punished that conduct more severely than disorderly conduct or assault. As a result, the trial judge concluded that prosecutors would charge defendants under the stalking statute in order to seek a more severe sentence, thereby nullifying the disorderly conduct and assault statutes. We disagree.

A person commits the offense of assault "when, without lawful authority, he engages in conduct which places another in reasonable apprehension of receiving a battery." (720 ILCS 5/12—1 (West 1992).) A person commits a battery if "he intentionally or knowingly

without legal justification and by any means, (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual." (720 ILCS 5/12—3 (West 1992).) The offense of disorderly conduct is committed when a person knowingly "[d]oes any act in such unreasonable manner as to alarm or disturb another and to provoke a breach of the peace." 720 ILCS 5/26—1(a)(1) (West 1992).

Although under some circumstances, conduct constituting stalking might also constitute the offenses of assault and disorderly conduct, the three offenses do not contain identical elements. For instance, assault is not limited to particular kinds of conduct such as "following" or "surveillance." Further, stalking requires an intent to place the victim in reasonable apprehension of bodily harm, while the assault statute encompasses the less serious harm of apprehension of insulting or provoking contact. Stalking also requires the transmitting of a threat, while disorderly conduct can be committed simply by disturbing or annoying another, rather than intending to place the victim in reasonable apprehension of bodily harm. Moreover, stalking requires affirmative acts of "following" or "surveillance," while disorderly conduct does not. Therefore, the trial court's conclusion that the existence of the stalking statute gives prosecutors unfettered discretion in charging violations of the statute, thereby nullifying the assault and disorderly conduct statutes, is unwarranted.

Moreover, as this court has previously stated, "the availability of different punishments for separate offenses based on the commission of the same acts does not offend the constitutional guarantees of equal protection or due process." (*People v. Wade* (1989), 131 Ill. 2d 370, 379, citing *United States v. Batchelder* (1979), 442 U.S. 114, 60 L. Ed. 2d 755, 99 S. Ct. 2198, and *People v. McCollough* (1974), 57 Ill. 2d 440; *cf. People v. Christy*

(1990), 139 Ill. 2d 172.) Accordingly, the trial court erred in concluding that the stalking statute violated the proportionate penalties clause.

We also reject Bailey's contention that stalking is a less serious offense than assault and disorderly conduct, and therefore the sentence under the stalking statute is disproportionate. Bailey's argument is premised on the fact that stalking does not include the phrase "without lawful authority." As a result, Bailey maintains that the stalking statute punishes less serious conduct as a felony, while similar conduct done "without lawful authority" is punished as the misdemeanor offense of assault. However, as this court has previously explained, the stalking statute only sought to punish conduct performed without lawful authority. Therefore, Bailey's argument fails on this basis alone. However, it also fails for a more fundamental reason.

All penalties are to be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship. (Ill. Const. 1970, art. I, § 11.) While this court has acknowledged that article I, section 11, places some restraint on the right of the legislature to establish penalties for crimes, this court has been reluctant to invalidate penalties prescribed by the legislature, since, institutionally, the legislature is better able to gauge the evils affecting our society and more capable of measuring the seriousness of various offenses than the courts. (*People v. Simmons* (1991), 145 Ill. 2d 264, 270; *People v. Hamm* (1992), 149 Ill. 2d 201, 219; *People v. Steppan* (1985), 105 Ill. 2d 310, 319.) Accordingly, this court will only invalidate a penalty when it is " 'cruel,' 'degrading' or 'so wholly disproportionate to the offense committed as to shock the moral sense of the community.' " *People v. Gonzales* (1962), 25 Ill. 2d 235, 240, quoting *People ex rel. Bradley v. Illinois State Reformatory* (1894), 148 Ill. 413, 421-22;

see also *People v. Farmer* (1995), 165 Ill. 2d 194, 210; *Hamm*, 149 Ill. 2d at 219.

We do not believe that the sentencing scheme for stalking imposes penalties which are unconstitutionally disproportionate to the offense. The stalking laws reflect the legislature's decisions that stalking is fundamentally different from other offenses like assault and disorderly conduct and therefore the penalties for stalking must be correspondingly more severe. While conduct which constitutes assault and disorderly conduct may also constitute stalking, these other statutes do not address the repetitive nature of the conduct and the harm attendant on victims subjected to the repeated conduct. Because the statutes have different purposes, it is presumed that the legislature considered different factors in enacting each penalty provision. (*People v. Wisslead* (1985), 108 Ill. 2d 389; *Steppan*, 105 Ill. 2d at 321.) We believe the imposition of greater sentences for stalking reflects the seriousness of the offense and is reasonably designed to remedy the evils of stalking and its attendant social repercussions. We therefore find no reason to depart from the presumptive validity of this legislative enactment. See *Terrell*, 132 Ill. 2d at 216.

### E. Constitutionality of Bail Provisions

In cause No. 76531, Coyne attacks the constitutionality of section 110—6.3 of the Code, the denial of bail provisions in stalking and aggravated stalking offenses. Coyne contends that section 110—6.3 is unconstitutional because it violates article I, section 9, of the Illinois Constitution of 1970, which provides that all persons are subject to bail except for those in three specifically enumerated categories. Coyne also claims that the statute violates separation of powers principles.

In response, the State contends that Coyne's arguments are untimely under Supreme Court Rule 604(c) and are also moot. (145 Ill. 2d R. 604(c).) Therefore, the

State argues that we should not consider the issue. Alternatively, the State argues that section 110—6.3 is not unconstitutional because it deals with the inherent authority of the courts to deny bail to prevent the fulfillment of threats. Moreover, the State maintains that section 110—6.3 does not infringe upon any power of the judiciary, but rather complements the courts' inherent authority to grant or deny bail.

Although the State contends that Coyne's arguments are untimely, we choose to address them at this time. (See *American Federation of State, County & Municipal Employees, Council 31 v. County of Cook* (1991), 145 Ill. 2d 475, 480.) We further find that, while Coyne's arguments may be moot, the criteria for the application of the public interest exception to the mootness doctrine are met. We therefore consider the merits of Coyne's arguments.

Coyne first contends that the denial of bail provisions of section 110—6.3 are unconstitutional under article I, section 9, of the Illinois Constitution. With regard to bail, article I, section 9, states: "All persons shall be bailable by sufficient sureties, except for the following offenses where the proof is evident or the presumption great: capital offenses; offenses for which a sentence of life imprisonment may be imposed as a consequence of conviction; and felony offenses for which a sentence of imprisonment, without conditional and revocable release, shall be imposed by law as a consequence of conviction, when the court, after a hearing, determines that release of the offender would pose a real and present threat to the physical safety of any person." Ill. Const. 1970, art. I, § 9.

At the time of Coyne's bail hearing, only a second or subsequent conviction for aggravated stalking, a Class 2 felony, could fall within an exception in section 9 of article I—felony offenses for which a sentence of

imprisonment, without conditional and revocable release, shall be imposed—and therefore be potentially nonbailable. (730 ILCS 5/5—5—3(c)(2)(F) (West 1992).) Consequently, Coyne argues that a defendant charged for the first time with stalking or aggravated stalking is entitled to bail under article I, section 9. Section 110— 6.3, however, allows a court to deny bail for a defendant charged with stalking or aggravated stalking if, after a hearing, the court determines that certain enumerated circumstances exist warranting the denial of bail. (See 725 ILCS 5/110—6.3(a), (b) (West 1992).) Coyne therefore contends that to the extent section 110—6.3 renders a bailable offense under the Illinois Constitution potentially nonbailable it unconstitutionally conflicts with article I, section 9, of the Illinois Constitution.

In *People ex rel. Hemingway v. Elrod* (1975), 60 Ill. 2d 74, this court rejected the petitioner's argument that a person charged with a bailable offense had an absolute right to be released on bail before conviction:

"In our opinion the constitutional right to bail must be qualified by the authority of the courts, as an incident of their power to manage the conduct of proceedings before them, to deny or revoke bail when such action is appropriate to preserve the orderly process of criminal procedure. This action must not be based on mere suspicion but must be supported by sufficient evidence to show that it is required. Thus keeping an accused in custody pending trial to prevent interference with witnesses or jurors or to prevent the fulfillment of threats has been approved. [Citations.] We think that under both the United States and Illinois constitutions the denial of bail to an accused under such circumstances is within the inherent power of the court. Also, if a court is satisfied by the proof that an accused will not appear for trial regardless of the amount or conditions of bail, bail may properly be denied." *Hemingway*, 60 Ill. 2d at 79-80.

We conclude that section 110—6.3 merely codifies the inherent authority of courts to deny bail to prevent

the fulfillment of threats as described in *Hemingway*. The denial of bail provisions in section 110—6.3 is not invoked unless it is alleged that the denial of bail is necessary to prevent fulfillment of the threat upon which the charge is based. (725 ILCS 5/110—6.3(a) (West 1992).) Therefore, section 110—6.3 does not conflict with article I, section 9 of the Illinois Constitution, but rather codifies the court's inherent authority to deny bail in a particular situation.

While Coyne acknowledges that courts have the authority to hold persons without bail, he contends that this power can only be employed after a defendant, initially released on bail, violates the terms of his bail. In support, Coyne relies on a statement in *Hemingway* that by holding the right to bail was not absolute this court was not adopting the principle of preventive detention. Coyne also relies on the fact that this court in *Hemingway* cited standards from the American Bar Association which recommended that certain restrictions be placed on a defendant released on bail rather than adopting a pretrial-detention standard. *Hemingway*, 60 Ill. 2d at 80-84.

Coyne misconstrues the import of these statements. These statements were made in order to achieve an appropriate balance between the right of an accused to be free on bail pending trial and the right of the public to be protected. By recognizing both the courts' inherent power to deny bail in certain circumstances and that restrictions can be placed on a person admitted to bail, this court sought to achieve that balance.

Coyne also argues that section 110—6.3 violates the separation of powers doctrine because it encroaches on the authority of the judiciary to admit persons to bail. We disagree. Section 110—6.3 requires that a court hold a hearing after the State files a petition requesting that the defendant be held without bail. According to the

language of the section, following a hearing, the court "may" deny bail if several enumerated factors exist. Thus, we find section 110—6.3 is discretionary, rather than mandatory, in nature and does not curtail a court's authority to impose bail. Consequently, we find that section 110—6.3 does not impermissibly infringe upon the powers of the court to admit persons to bail. See *People v. Felella* (1989), 131 Ill. 2d 525, 539-40; *cf. People v. Williams* (1991), 143 Ill. 2d 477, 483-84.

## F. Ineffective Assistance

Coyne also claims in cause No. 76531 that he was denied effective assistance of counsel because trial counsel failed to subpoena certain hotel and medical records before trial. Coyne maintains that these records would have established: (1) that he took Michalski to the hospital in February 1992; (2) that he filled her prescription following her discharge from the hospital; and (3) that they spent Easter weekend in 1992 together in Chicago. Coyne claims that these records would have proven that during a time when Michalski stated she was not having a relationship with Coyne and was in fear of her life, she was spending time with him. Coyne further contends that these records would have impeached Michalski's general credibility and negated the existence of one of the elements of the offense of aggravated stalking—that on September 19, 1992, Coyne threatened Michalski with the requisite intent.

Claims of ineffective assistance of counsel are examined under the two-prong test established in *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052. (See also *People v. Albanese* (1984), 104 Ill. 2d 504, 527.) Under *Strickland*, a defendant must show both a deficiency in counsel's performance and that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. (*Strickland v. Washington* (1984), 466

U.S. 668, 694, 80 L. Ed. 2d 674, 698, 104 S. Ct. 2052, 2068; *People v. Hampton* (1992), 149 Ill. 2d 71, 108.) A court may resolve the ineffective-assistance claim without determining whether counsel was actually deficient, if the court is able to conclude that no prejudice resulted from the complained-of conduct. *Strickland,* 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069; *People v. Flores* (1992), 153 Ill. 2d 264, 283-84.

Coyne urges this court to conclude that the submission of the hotel and medical records at trial would have proved Michalski was lying and precluded the trial judge from finding that he had threatened Michalski. "After all, how could the State claim [Michalski] was living in fear of [Coyne] while she was having intimate relations with him." This statement leads us to believe that Coyne's argument is based in part on a misunderstanding of the stalking statute. The stalking statute's requirement of reasonable apprehension of bodily harm focuses on the intent of the person making the threat. It does not require an examination of whether the victim was reasonably placed in apprehension of bodily harm. Moreover, Coyne's statement is factually inaccurate in that a person can have intimate relations with someone and still be in fear of that person.

In any event, we conclude that the admission of the hotel and medical records would not have affected the outcome of the trial. Copies of the hotel and medical records were before the court at the hearing on the motion for a new trial. In denying Coyne's motion for a new trial, the trial judge specifically found that the records did go to Michalski's credibility. However, the trial judge concluded that Michalski had been cross-examined regarding the events in the records and that the records would have been cumulative of the testimony at trial. We therefore find that if the records had been introduced at trial the judge would not have reached a

different result regarding Coyne's guilt. Had the records supported Coyne's version of events, the trial judge could still have found that Coyne threatened Michalski with the requisite intent and in furtherance of the threat followed her and placed her under surveillance. Based on the preceding reasons, we find that defense counsel's failure to subpoena records, and his resulting inability to use them at trial, did not prejudice the outcome of the trial. Accordingly, we reject Coyne's claim of ineffective assistance of counsel.

## G. Sufficiency of the Evidence

Finally, in cause No. 76531, Coyne argues that he was not proved guilty of aggravated stalking beyond a reasonable doubt. Specifically, Coyne contends that the State failed to prove: (1) that the threat issued to Michalski was made with the requisite intent; (2) that the specific incidents of surveillance and following were done in furtherance of the threat; and (3) that the threat created a reasonable apprehension of death, bodily harm, sexual assault, confinement, or restraint in Michalski. We discuss each of these contentions in turn.

To be convicted of aggravated stalking, the State must prove that the defendant threatened the victim with the intent to place the victim in reasonable apprehension of death, bodily harm, sexual assault, confinement or restraint. Intent to cause bodily harm may be inferred from the character of the defendant's acts and the circumstances surrounding the commission of the offense. (*People v. Terrell* (1989), 132 Ill. 2d 178, 204; *People v. Garcia* (1983), 97 Ill. 2d 58, 85.) Moreover, evidence of the defendant's prior acts of violence toward a victim may be admitted as proof of the defendant's intent at the time of the commission of the offense charged. *People v. West* (1990), 137 Ill. 2d 558, 586; *People v. McCarthy* (1989), 132 Ill. 2d 331, 344.

The evidence at trial established that Coyne threat-

ened Michalski by stating that he was going to "blow" her and her children away. The State alleged that this threat was made with the intent to place Michalski in reasonable apprehension of bodily harm. In order to prove that defendant threatened Michalski with the requisite intent, the State elicited testimony from Michalski regarding incidents occurring prior to the conduct alleged in the indictment.

Michalski testified that on November 28, 1991, Coyne was in her apartment and refused to leave. He grabbed her, threw her on the couch, spit in her face, and called her names. Coyne was lying on top of Michalski and refused to let her off the couch. Michalski was eventually able to free herself and ran out of the apartment. She later explained to police what had transpired, and the police removed Coyne from her apartment. Michalski filed a complaint against Coyne for this conduct and received an order of protection.

Michalski further testified that on January 27, 1992, she was driving home when she had to stop at a red light. Coyne pulled up next to her, got out of his car, and began yelling at her. Michalski drove through the red light, and Coyne followed her. Coyne attempted to drive in the same lane that Michalski was driving in. Coyne then turned, and Michalski drove to a pay phone to call the police. While on the phone with the police, Michalski saw Coyne pull into the parking lot. Michalski proceeded to lock herself in the car. Coyne pounded on the driver's side window of her car and called her names. When the police arrived, Coyne drove off.

On March 16, 1992, Michalski was in a parking lot looking for a parking space when she spotted Coyne. Michalski pulled up next to a woman she knew and asked her to call the police. As she was speaking with the woman, Coyne exited his vehicle and approached Michalski's car. Coyne then started ripping Michalski's

windshield wipers off and pounding on top of the car. He also attempted to break the driver's side window and called her names. Michalski drove off. Coyne chased after her and proceeded to ram the back of his car into hers.

Michalski also testified that she received a phone call from Coyne on June 21, 1992. During this phone call, Coyne told Michalski that "he was going to come over with a gun and *** he was going to blow [her] away and that he was going to blow [her] children away." Moreover, a valid order of protection was in effect when the incidents Michalski described in her testimony occurred, with the exception of the November 28, 1991, incident, after which an order of protection went into effect. Coyne denied that each of these incidents occurred.

Based on testimony concerning Coyne's prior conduct before the issuance of the threat and the circumstances surrounding the threat itself, the trial judge could have rationally concluded that when Coyne threatened Michalski he possessed the requisite intent to place her in reasonable apprehension of bodily harm. The fact that Coyne did not carry out the threat or that he denied that these prior acts occurred does not negate this finding. It was the responsibility of the trier of fact to resolve the credibility of the witnesses, the weight to be given to this testimony and the reasonable inferences to be drawn from the evidence. (*People v. Tye* (1990), 141 Ill. 2d 1, 13.) Moreover, as we have stated, the threat must be made with the requisite intent, but it need not actually place the victim in apprehension of bodily harm.

Under the aggravated stalking statute, the evidence must show not only that defendant threatened the victim with the requisite intent, but also that, in furtherance of the threat, defendant followed or placed

the victim under surveillance on at least two separate occasions. The acts of surveillance and following committed by Coyne occurred on December 8, 1992, when he was found peering into Michalski's apartment through her patio windows and on January 7, 1993, when he followed Michalski out of the Bridgeview courthouse.

Coyne alleges that the State failed to prove these acts were done "in furtherance of the threat" because the threat at issue was that he would "blow" Michalski and her children away. However, at the time of the incidents giving rise to the charge of aggravated stalking, he was not armed and therefore was incapable of carrying out the threat, nor did he perform any overt act which could be considered as attempting to carry out the threat. Coyne therefore maintains that the State could not prove that his actions were in furtherance of the threat.

We believe that the evidence was sufficient for the trier of fact to rationally conclude that Coyne's conduct on December 8, 1992, and January 7, 1993, was done "in furtherance of" the threat issued to Michalski. As discussed earlier in this opinion, this phrase does not require that the following or surveillance result in the actual acts threatened. It is sufficient that the acts promote or reinforce the threat.

Finally, Coyne argues that the State failed to prove that the threat made to Michalski placed her in reasonable apprehension of bodily harm and that he had the imminent ability to carry out the threat. As previously noted, the language of the stalking statute does not require that the victim actually be placed in reasonable apprehension of bodily harm. Rather, the statute only requires that the person making the threat intends to place the victim in reasonable apprehension of bodily harm. The statute also does not require that the defen-

dant have the imminent ability to carry out the threat. We therefore reject Coyne's argument. In viewing the evidence in the light most favorable to the State, we find that the evidence was sufficient to support Coyne's conviction. See *People v. Schott* (1991), 145 Ill. 2d 188, 203; *People v. Young* (1989), 128 Ill. 2d 1, 48-49.

### III. CONCLUSION

For the foregoing reasons, we uphold the constitutionality of the stalking and aggravated stalking statutes and section 110—6.3 of the Code. We, therefore, reverse the trial judge's ruling in cause No. 76151 that the stalking statute was unconstitutional and remand for further proceedings. Coyne's conviction in cause No. 76531 is affirmed.

> *No. 76151—Circuit court reversed;*
> *cause remanded.*
> *No. 76531—Circuit court affirmed.*

JUSTICE HEIPLE, concurring in part and dissenting in part:

I agree that the stalking and aggravated stalking statutes are constitutional. However, I disagree with the majority's conclusion that the provision for the denial of bail before trial, section 110—6.3 of the Code, is constitutional.

The Illinois Constitution provides that "[a]ll persons shall be bailable by sufficient sureties, except for the following where the proof is evident or the presumption great: capital offenses; offenses for which a sentence of life imprisonment may be imposed as a consequence of conviction; and felony offenses for which a sentence of imprisonment, without conditional and revocable release, shall be imposed by law as a consequence of conviction, when the court, after a hearing, determines that release of the offender would pose a real and present threat to the physical safety of any person." (Ill.

Const. 1970, art. I, § 9 (as amended).) This section of the Illinois Constitution grants a defendant the unfettered right to bail, unless the defendant falls within one of the specifically enumerated classes.

At the time of Coyne's bail hearing, only a subsequent or second conviction for aggravated stalking would have fallen within one of the exceptions in article I, section 9, as such a conviction would allow for a sentence of imprisonment without conditional and revocable release. To the extent that section 110—6.3 renders an otherwise bailable offense nonbailable, section 110—6.3 is in direct conflict with the literal language of article I, section 9, of the Illinois Constitution. Thus, any time section 110—6.3 is applied in a case where the defendant has not been previously convicted of aggravated stalking, an unconstitutional application of the section results.

The majority, relying on *People ex rel. Hemingway v. Elrod* (1975), 60 Ill. 2d 74, attempts to avoid the constitutionality issue by concluding "that section 110—6.3 merely codifies the inherent authority of courts to deny bail." (167 Ill. 2d at 239.) Courts, however, do not have the inherent authority to admit or deny bail before a defendant's trial. A court's power to admit or deny bail before trial is limited by the express language of the Illinois Constitution.

A close reading of *Hemingway* supports the conclusion that courts have the inherent authority to deny bail during, but not before, trial. The court in *Hemingway* adopted the American Bar Association Standards Relating to Pretrial Release and remanded the case to be considered in conjunction with these standards. (*Hemingway*, 60 Ill. 2d at 84.) These standards involved the ability of the court to place conditions on a defendant being released on bail, to issue a warrant if the de-

fendant violated bail or the conditions, and to impose different conditions or revoke a defendant's bail if a violation was proven. *Hemingway*, 60 Ill. 2d at 81-83.

Although the *Hemingway* court stated that "the denial of bail to an accused *** is within the inherent power of the court," the court limited the scope of this statement. (*Hemingway*, 60 Ill. 2d at 80.) The court preceded this language with the statement that "the constitutional right to bail must be qualified by the authority of the courts, as an incident of their power to manage the conduct of proceedings *before them*, to deny or revoke bail when such action is appropriate to preserve the orderly process of *criminal procedure.*" (Emphasis added.) (*Hemingway*, 60 Ill. 2d at 79.) The two cases on which the *Hemingway* court relied involved the denial of bail during trial (*Fernandez v. United States* (1961), 5 L. Ed. 2d 683, 81 S. Ct. 642) and the denial of bail while the defendant was waiting appeal (*Carbo v. United States* (1962), 7 L. Ed. 2d 769, 82 S. Ct. 662). Clearly, the court limited the scope of its statement to the inherent authority of courts to deny bail during trial, when a case is *before them*, or after trial, while a defendant waits appeal.

While engaging in the above analysis, I am cognizant of my statements in *People v. Williams* (1991), 143 Ill. 2d 477. I stated that "[t]he decision to grant or deny bail in criminal proceedings *** is an inherent power of the courts." (*Williams*, 143 Ill. 2d at 486 (Heiple, J., specially concurring).) *Williams* involved the ability of courts to grant or deny bail while a defendant appeals his conviction—a situation which involves the orderly process of criminal procedure. The statement applied only to the power of courts over a defendant while he awaits appeal.

Accordingly, I respectfully dissent from that portion

250

of the majority opinion which concludes that the provision for the denial of bail before trial is constitutional.

JUSTICE HARRISON joins in this partial concurrence and partial dissent.