THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERT DANIEL, Defendant-Appellant.

First District (2nd Division)    No. 1—95—0788

Opinion filed September 24, 1996.

HARTMAN, P.J., dissenting.

Rita A. Fry, Public Defender, of Chicago (Ira Churgin, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Timothy Felgenhauer, Assistant State's Attorneys, of counsel), for the People.

JUSTICE DiVITO delivered the opinion of the court:

Following a bench trial, defendant Robert Daniel was found guilty of aggravated stalking and was sentenced to 30 months' probation, the first six months to be served in the custody of the Cook County Department of Corrections. He appeals his conviction, contending that the State failed to prove an essential element of his crime, the act of surveillance, beyond a reasonable doubt. For the reasons that follow, we affirm.

In March 1994, Barbara Daniel (Barbara) received a plenary order of protection prohibiting defendant, her husband, from entering her home or place of employment, taking or damaging her automobile, or approaching her or her two children.

At defendant's trial, Barbara testified that at noon on October 14, 1994, she was working at a currency exchange at 524 South Laramie in Chicago. She was sitting in a teller's booth behind bulletproof glass when defendant walked in and said, "[B]itch, I'm going to fuck you up, I'm going to do an O.J. Simpson on you, and I'm going to fuck up your Jeep." Defendant continued to threaten her, all the while "ranting and raging and throwing his hands up in the air." Defendant left the currency exchange after approximately 15 minutes. Barbara watched as he crossed the street and approached her Jeep. She saw him walk to the rear of the Jeep, make a throwing motion, then depart.

Barbara waited for approximately 15 minutes to make sure defendant was gone and then inspected her Jeep. Its rear window was shattered. She called the police and reported the incident.

After leaving work, Barbara rented another car while her Jeep was being repaired, and drove to the home of defendant's mother to pick up her infant daughter. Defendant was at his mother's home at the time. She then drove her daughter several blocks to her mother's house. As she exited the car, she saw defendant walking towards her mother's house. At that time, her brother Richard came out of the house and took the baby into the house. Defendant approached her, saying that he would "fuck up" the rental car and her. Richard called the police, and defendant left.

Barbara concluded her testimony:

"Everywhere that I went, he was there.

I couldn't go anywhere. I couldn't work in peace. This man was forever threatening me, following me. I mean, he would sit outside my house at night.

When I would leave at 11:00 at night to go to work, he's there sitting in the parking lot. I do not want to end up dead. I do not want to end up like Nicole Simpson. I am afraid of this man. I do not want to end up in the newspaper."

The circuit court found defendant guilty of aggravated stalking and sentenced him as stated previously. Maintaining that he was not proved guilty of aggravated stalking beyond a reasonable doubt, defendant appeals.

■ The stalking statute provides as follows:

"(a) A person commits stalking when he or she, knowingly and without lawful justification, on at least 2 separate occasions *follows another person* or *places the person under surveillance* or any combination thereof and:

(1) at any time transmits a threat to that person of immediate or future bodily harm, sexual assault, confinement or restraint; or

(2) places that person in reasonable apprehension of immediate or future bodily harm, sexual assault, confinement or restraint." (Emphasis added.) 720 ILCS 5/12—7.3(a)(1), (a)(2) (West 1994).

That defendant violated an order of protection in conjunction with his committing the offense of stalking made the instant offense aggravated stalking. 720 ILCS 5/12—7.4(a)(3) (West 1994).

■ ■ The stalking statute specifies that one "places a person under surveillance" by "*remaining present outside* the person's school, place of employment, vehicle, other place occupied by the person, or residence other than the residence of the defendant." (Emphasis added.) 720 ILCS 5/12—7.3(d) (West 1994).

"The legislative intent in enacting the stalking statute was to prevent violent attacks by prohibiting conduct that may precede them. The statute was also intended to avert the terror, intimidation, and justifiable apprehension caused by the harassing conduct itself. [Citations.] Too often the obsession underlying the stalking behavior is a forewarning of future violence against the victims and their families." *People v. Holt*, 271 Ill. App. 3d 1016, 1021, 649 N.E.2d 571 (1995).

Thus, in order to prevent harassment and violent attacks, legislative intent dictates that the stalking statute be given a liberal construction. See *People v. Bailey*, 167 Ill. 2d 210, 224-25, 657 N.E.2d 953 (1995); *Holt*, 271 Ill. App. 3d at 1022; *People v. Krawiec*, 262 Ill. App. 3d 152, 161, 634 N.E.2d 1173 (1994).

Defendant's sole contention in this appeal is that, even if Barbara's testimony is taken as true, there was no evidence that he placed her "under surveillance" because he did not remain present

outside of her place of employment. Defendant does not dispute that one of the requisite occasions of stalking was proved by the evidence showing that he followed Barbara from his mother's house to her mother's house.

In a criminal trial, the prosecution must prove beyond a reasonable doubt all material facts of the offense as charged. *People v. Daniels*, 75 Ill. App. 3d 35, 40, 393 N.E.2d 667 (1979). The standard of review for challenging the sufficiency of the evidence is whether, after viewing all the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Collins*, 106 Ill. 2d 237, 261, 478 N.E.2d 267 (1985).

■ In this case, the information charged that on two separate occasions on October 14, 1994, defendant followed Barbara or placed her under surveillance. The first instance of stalking, which is in issue here, is described in the criminal information as follows: "On October 14, 1994 Robert Daniel placed Barbara Daniel under surveillance outside Barbara Daniel's place of employment at 524 S Laramie, Chicago, Illinois." Viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found that defendant placed Barbara under surveillance, both while inside *and* while outside the currency exchange.

That defendant placed Barbara under surveillance during the period that he was inside the currency exchange may not strictly comply with the allegations in the information. A variance between the crime charged and the crime proved is not fatal to the conviction, however, unless the variance is material and it misleads the accused in making his defense or exposes him to double jeopardy. *People v. Jones*, 245 Ill. App. 3d 674, 677, 615 N.E.2d 373 (1993). Here, in light of case law that has interpreted the statutory language "remaining present outside" to include actions that occur inside (*Holt*, 271 Ill. App. 3d at 1022; *People v. Sowewimo*, 276 Ill. App. 3d 330, 341-42, 657 N.E.2d 1047 (1995), *appeal denied*, 166 Ill. 2d 551, 664 N.E.2d 646 (1996)), the charging document gave defendant sufficient notice as to the nature of the charges against him and did not mislead him in making his defense.[1]

Moreover, although the State conceded at oral argument that it

---

[1] The dissent decries our "prosecutorial stance," because *Holt* and *Sowewimo* were decided after defendant's trial and thus he could not have known of their holdings. Apart from the obvious fact that the principle of law established by both those cases was articulated after the trials of Messrs. Holt and Sowewimo, the principle of law they supply—that under certain

was relying exclusively on defendant's conduct outside the currency exchange, Illinois law is well settled that a reviewing court may affirm the circuit court's decision based on any grounds in the record. *People v. Thomas*, 164 Ill. 2d 410, 419, 647 N.E.2d 983 (1995).

For the purposes of the stalking statute, a defendant may be found to have remained present outside for conduct that occurs inside. *Holt*, 271 Ill. App. 3d at 1022; *Sowewimo*, 276 Ill. App. 3d at 341-42. In *Holt*, the first of the incidents forming the basis of the stalking charge occurred when M.S. saw the defendant, who had been harassing and threatening her, in the only ice skating facility in the town, even though he had never shown an interest in skating. M.S. saw him on several other occasions, staring at her through the window of the observation area during her 45-minute private skating sessions. On appeal, the court construed the phrase "remaining present outside" to mean that the defendant did not have to be physically present outside of the building occupied by the victim in order to place her under surveillance because one may be harassed just as easily "from within a separate portion of a large structure, such as a shopping mall or ice skating facility, as from outside such a structure." *Holt*, 271 Ill. App. 3d at 1022. The court stated that the stalking statute "encompasses the surveillance of a person from a place within the same primary structure but distinct from the 'other place occupied by the' person." *Holt*, 271 Ill. App. 3d at 1022, quoting 720 ILCS 5/12—7.3(d) (West Supp. 1993).

Also instructive is *Sowewimo*. In that case, the defendant engaged

---

circumstances, the stalking statute may encompass actions performed by a defendant within a building—is sound and is supported by the broad language of the stalking statute itself ("by remaining present outside the *** other place occupied by the person" (720 ILCS 5/12—7.3(d) (West 1994))).

Because of our belief in the soundness of the holdings of *Holt* and *Sowewimo*, we have chosen to offer two distinct bases for affirmance when only one is required. We have concluded that defendant violated the stalking statute (1) by his actions within the currency exchange because of the peculiar nature of that building, and (2) by "remaining outside" the currency exchange building—even for a brief period—because of the nature of his actions, actions that the stalking statute was designed to prohibit and that established that he was no mere passerby.

We agree with the dissent that defendant "might well have been charged [with] and found guilty of several crimes" (283 Ill. App. 3d at 1011) but, unlike the dissent, we see no reason to exonerate him from the offense of aggravated stalking in the interest of assuring constitutional protection for innocent conduct. We perceive no threat to innocent behavior by the application of the legal principles we apply to defendant's behavior in this case.

in harassing and threatening conduct towards P.S. On one occasion, the defendant went to P.S.'s place of employment and asked to see her. After P.S. refused to see him, the police arrived and arrested him. *Sowewimo*, 276 Ill. App. 3d at 334. About a month later, the defendant walked into the lunchroom of P.S.'s office, pulled out a gun, and grabbed her by the hair. He shot at an employee who tried to intervene and then closed and barricaded both doors to the room. Defendant raped P.S. before surrendering to the police. *Sowewimo*, 276 Ill. App. 3d at 334-35. On appeal, the court held that the two visits to P.S.'s place of employment constituted two acts of surveillance. The court stated that the defendant's confinement of P.S. in the lunchroom was "enforced surveillance." *Sowewimo*, 276 Ill. App. 3d at 341-42.

Here, Barbara was in a teller's booth behind bulletproof glass when defendant entered the currency exchange where she was employed. That booth was sufficiently distinct from the rest of the currency exchange so as to bring defendant's conduct within the *Holt* court's definition of surveillance. Moreover, *Sowewimo* illustrates that it is not necessary that the place of surveillance be the type of large structure envisioned by *Holt*. There, as here, the defendant engaged in threatening behavior in a confined area. Thus, taking *Holt* and *Sowewimo* together, the evidence here was sufficient for a rational trier of fact to conclude that defendant placed Barbara under surveillance during the time that he remained inside the currency exchange.

Moreover, the evidence was sufficient for a rational trier of fact to find that defendant remained present outside the currency exchange. We discern no statutory intent to set a minimum amount of time a defendant must remain in the vicinity of his victim's building before coming within the ambit of the stalking statute. Thus, although "remain" has a temporal connotation, there is no basis for concluding that a defendant must stop, stay, or wait for a set period of time before his behavior is deemed to be surveillance under the stalking statute. *Cf. Bailey*, 167 Ill. 2d at 230 (that the term "following" has an undefinable element of proximity does not render the statute vague). "As this [the supreme] court has consistently held, impossible levels of specificity [in drafting a statute] are not required. The only requirement is that the statute convey sufficiently definite warnings that can be understood when measured by common understanding and practices." *Bailey*, 167 Ill. 2d at 229.

In *Bailey*, the supreme court found the evidence was sufficient to show surveillance where the defendant, who was looking inside the victim's window, immediately left upon being observed. *Bailey*, 167

Ill. 2d at 219, 246. There, as in the instant case, no evidence showed that the defendant stopped, waited, or stayed outside of the victim's house. Here, defendant remained present in the vicinity of the currency exchange long enough to carry through on one of his threats by committing criminal damage to property. That is the type of intimidation, a forewarning of future violence against the victim herself, that the stalking statute seeks to deter. See *Bailey*, 167 Ill. 2d at 224.

Although this is not the paradigmatic case where a stalker lies in wait for his victim, there is no basis for concluding that the legislature meant to exempt this sort of conduct from the stalking statute. Had defendant merely come into the area and broken the window of Barbara's Jeep, without coming into the currency exchange and threatening her for 15 minutes, we surely would have held his behavior to be the "surveillance" contemplated by the statute. That defendant's conduct in entering Barbara's place of employment, threatening her, and remaining in the vicinity of her employment long enough to follow through on one of his threats was more egregious than had he simply gone to her place of employment and damaged her car should not exclude him from the ambit of the stalking statute. Such conduct is not the sort of innocent behavior that courts must protect from an overly broad interpretation of the stalking statute. See *Bailey*, 167 Ill. 2d at 224-25.[2]

Because a rational trier of fact could have found that defendant had Barbara under surveillance either while inside or while outside

---

[2]When discussing events within the currency exchange, the dissent supplies the correct statutory definition of "surveillance" and refers to the plain language of the statute. See 283 Ill. App. 3d at 1010. When discussing defendant's actions outside the currency exchange, however, the dissent inexplicably ignores the statutory definition of "surveillance" ("remaining present outside the person's *** place of employment" (720 ILCS 5/12—7.3(d) (West 1994))) and instead supplies dictionary definitions for that term ("close watch kept over one" and "close and continuous observation" (Webster's Third New International Dictionary 2312 (1986))). It then concludes that the activity required by the dictionary definitions has not been proved. Thus, the dissent proclaims, "the majority strains not only the constitution, but common sense as well." 283 Ill. App. 3d at 1011.

Both common sense and well-established principles of statutory construction require the application of the only definition explicitly given in a statute. We know of no constitutional or commonsense reason for ignoring the legislature's definition of a term and looking elsewhere, even to so noteworthy an authority as Webster's Third New International Dictionary.

the currency exchange, his conviction was valid. The judgment of the circuit court is affirmed.

Affirmed.

BURKE, J., concurs.

PRESIDING JUSTICE HARTMAN, dissenting:
The charging instrument in this case did not apprise defendant properly of the charges sought to be proved against him. A defendant has a fundamental right, under both the Federal Constitution (U.S. Const., amend. VI) and the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, § 8), to be informed of the "nature and cause" of criminal accusations made against him. *People v. DiLorenzo*, 169 Ill. 2d 318, 321, 662 N.E.2d 412 (1996). The charging instrument must contain sufficient particularity to enable the accused to prepare a defense. *People v. Meyers*, 158 Ill. 2d 46, 54, 630 N.E.2d 811 (1994).

The stalking statute states in pertinent part that one places a person "under surveillance" by "remaining present *outside* the person's *** place of employment." (Emphasis added.) 720 ILCS 5/12—7.3(d) (West 1994). Nothing in the charging instrument informed defendant that he could be convicted for placing Barbara under surveillance *inside* the currency exchange. The majority mistakenly concludes that case law gave him sufficient notice that the statutory language "remaining present outside" includes actions *inside* a building. Indeed, defendant could not have been apprised of such a questionable construction of the plain language of the statute when the cases cited by the majority were decided *after* his trial. See *People v. Holt*, 271 Ill. App. 3d 1016, 649 N.E.2d 571 (1995); *People v. Sowewimo*, 276 Ill. App. 3d 330, 657 N.E.2d 1047 (1995).

The State, itself, recognizing the unfairness of the situation, indicated at oral argument that the charging instrument did not encompass his conduct inside the building. Yet, the majority, taking its own prosecutorial stance, improperly holds him accountable for conduct not articulated within the four corners of the charging instrument.

The variance between the crime charged and the crime proved was material and fatal to defendant in this case. Particularly is this so since defendant's own attorney elicited critical evidence against him during the cross-examination of Barbara, in which she stated that defendant was present inside the currency exchange threatening her for a period of time up to 15 minutes. Had the charging instrument properly apprised defendant that his actions inside the

currency exchange could lead to his conviction, defense counsel would have been open to a charge of incompetency in pursuing this line of questioning.

The word "surveillance" is commonly defined and understood, in part, to mean "close watch kept over one" or "close and continuous observation." Webster's Third New International Dictionary 2302 (1971). Without defendant's conduct inside the currency exchange, there is no basis for finding him guilty of this statutory second requisite instance of aggravated stalking. There was no evidence that defendant "closely watched" or "continuously observed" Barbara after leaving the currency exchange. To find that defendant's actions outside of Barbara's place of employment constitute stalking under these facts, as the majority does here, places any person who walks by a building in danger of being charged with stalking. The result brought about by the majority strains not only the constitution, but common sense as well.

There is no doubt that defendant might well have been charged and found guilty of several crimes; aggravating stalking was not one of them.

I would reverse the judgment in this case.