THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. COLLEEN RYAN, Defendant-Appellant.

Second District   No. 2—01—0783

Opinion filed January 15, 2003.

Michael J. Conway, of Waukegan, for appellant.

Michael J. Waller, State's Attorney, of Waukegan (Martin P. Moltz and Lawrence M. Bauer, both of State's Attorneys Appellate Prosecutor's Office, of counsel), and Barry W. Jacobs, of Chicago, for the People.

JUSTICE KAPALA delivered the opinion of the court:

The State charged defendant, Colleen Ryan, via an information, with one count of enhanced retail theft (720 ILCS 5/16A—3(a) (West 2000)) and one count of retail theft (720 ILCS 5/16A—3(a) (West 2000)). The State subsequently nol-prossed the felony charge of enhanced retail theft and proceeded to trial on the misdemeanor count of retail theft. A jury found defendant guilty, and the trial court sentenced her to 180 days in jail. On appeal, defendant argues that (1) she is entitled to a dismissal or a new trial because the State failed to disclose that, when shown a photographic lineup, the State's witness initially identified someone other than defendant and (2) the trial court abused its discretion during sentencing by considering a statutory mitigating factor as an aggravating factor. For the following reasons, we affirm.

Defendant moved to suppress in-court and out-of-court identification evidence. During the hearing on the motion, the State informed the court that the original photographs used in the lineup were not available and that the police officer who conducted the lineup left the department and could not be located. All the State had was a poor-quality photocopy of the lineup. As a result, the State informed the trial court that it had "no objection to striking the photo lineup from any further use." Accordingly, the trial court ruled that the State could not introduce any evidence of the out-of-court identification.

During the trial, the State's only witness was John Mehus. At about 2:15 p.m. on August 16, 2000, Mehus was working as the manager of a Walgreen's store in Round Lake Beach. Business was relatively slow. Mehus testified that, while he was on the sales floor, he saw a woman carrying a shopping basket full of merchandise. About two or three minutes later, Mehus saw the woman in another part of the store and noticed that there were only two or three items in the basket. About one or two minutes later, Mehus saw the woman exit the store without paying for anything.

Mehus followed the woman out of the store. She no longer was carrying the basket but had a large purse. Mehus saw two cartons of cream cheese and a quart of milk at the top of the purse and recognized the items as goods sold in his store. Mehus called to the woman and told her that he would call the police unless she paid for the items.

The woman began to follow Mehus back into the store. Mehus said that he had changed his mind and was going to call the police anyway. The woman became very upset, went to her car, and drove away.

Mehus described the car as a "blue SUV-type Blazer, Explorer." He wrote down the license plate number and called the police. During the trial, Mehus could not remember the license plate number. Mehus testified that he did not know the woman and had never seen her before the incident. In court, Mehus identified defendant as the offender.

During cross-examination, Mehus testified that each time he observed the woman in the store, he looked at her for only a few seconds. The woman walked very fast as she exited the store. Immediately after the woman drove away, Mehus went back inside and called the police, who arrived 30 to 60 minutes later. Curiously, over the State's objection, the defense elicited testimony from Mehus that on August 18, 2000, two police officers showed him a photographic lineup. The display included six photographs. Mehus looked at them for about three seconds and picked out one photo, which was not of defendant.

Defense counsel Michael Conway immediately requested a sidebar conference. He told the court that the State never informed him that Mehus initially identified someone else. Conway claimed that he was prejudiced because, had he known, he could have investigated the other person to find out whether she could have been the offender. Assistant State's Attorney Bolling Haxall replied that Mehus had just informed him that morning about the initial identification. Haxall believed that, because the pretrial identification was not going to be an issue during the trial, it was not necessary to inform Conway.

During continued cross-examination, Mehus testified that, after he picked out the first photo, one of the officers asked him if he was sure about the identification. Mehus took more time and selected defendant's photo. Neither of the officers suggested to Mehus whom they believed the suspect to be. Mehus testified that, about two months before the trial, he was in court in connection with this cause and saw defendant. He also saw defendant in court the day before the trial.

After the State rested, the court held another conference. The State argued that defendant was not prejudiced because she had the opportunity to cross-examine Mehus about the photo lineup. The State, however, was amenable to a short continuance. Defendant doubted whether a short continuance would give her enough time to investigate. The court stated:

> "I am sitting here, my mind is not coming up with a resolution. I hate to bring in a jury and then say, okay, now take a four-hour lunch, come back.

Well, I don't like it, but I am going to—okay. Here's what we need to do to get this in the proper perspective. There was a problem with discovery. The ball is in your court. Tell me exactly what you're doing, what you want. Do you have a motion?" Conway replied, "I would make a motion to dismiss based upon the fact that here I am in the middle of a trial learning of this information, and its [sic] something that I could have obviously investigated earlier, and we're obviously prejudiced." Conway asserted that the only remedy was a dismissal.

The trial court denied defendant's motion but offered a continuance to obtain the photograph of the other person. Defendant moved for a directed verdict, and the trial court denied the motion. Defendant presented no evidence, and the jury found defendant guilty.

Defendant timely moved for a judgment notwithstanding the verdict or alternatively for a new trial. One of defendant's contentions was that the trial court "erred in denying defendant's Motion to Dismiss (or declare mistrial) the charge *** after it was learned of a discovery violation pertaining to the identification procedure involving the photo line-up." Defendant did not specify upon what basis she was relying for her motion to dismiss or for a mistrial but did refer to *Brady v. Maryland,* 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963), at the oral argument on her motion. During the hearing on the motion, defendant's attorney argued that the court should have given him "ample" time to investigate the issue. The trial court found that the discovery violation did not prejudice defendant and accordingly denied the motion.

The presentence investigation report was not included in the record. During the sentencing hearing, it was revealed that since 1982 defendant has been convicted several times of retail theft. On the most recent occasion in 1994, defendant was sentenced to 90 days in jail. The evidence in mitigation in the instant case revealed that defendant was injured in an automobile accident and was receiving physical therapy and worker's compensation benefits. Defendant's daughter was 20 years old and a full-time student. Defendant's daughter worked part time and would have no one else to support her if defendant were incarcerated.

The trial court stated:

"Five years ago the defendant was sentenced to 90 days in the Lake County jail ***. At the time her daughter was 15 years old and she saw fit to commit another offense. *** I think it's something that militates against a person charged with an offense to a certain degree that they would do this to their family members, put themselves in jeopardy of being *** incarcerated when they

have someone dependent on them. So instead of looking at that like most people may do that [that] is a factor that should speak in her defense I find it something that she didn't care about when she committed the offense. *** She had a child she left [when] she was sentenced to 90 days back in 1994 and it was not a problem [at] that time that it would keep her from violating the law another time."

The court sentenced defendant to 180 days in jail and stayed the sentence pending appeal. Defendant did not object to the trial court's comments at sentencing and did not file a motion to reduce sentence. Defendant timely appealed.

■ On appeal, defendant argues first that the trial court erred in denying her motion to dismiss after learning that the State failed to disclose that its identification witness initially selected someone other than defendant. We begin our analysis by noting that in her argument on appeal defendant relies on both Rule 412(c) (188 Ill. 2d R. 412(c)) and *Brady* for her contention that she is entitled to a dismissal or new trial. Discovery under Rule 412 only applies to defendants who have been charged with a felony. *People v. Schmidt*, 56 Ill. 2d 572, 574 (1974). The requirements of *Brady*, on the other hand, apply to misdemeanors. *Schmidt*, 56 Ill. 2d at 574. Here, defendant was charged with both a felony and misdemeanor even though the felony was subsequently nol-prossed. Thus, we consider the obligations under Rule 412 to apply. Even if they did not, because Rule 412(c) is coextensive with the protections of *Brady* (see *People v. Brown*, 151 Ill. App. 3d 446, 449-50 (1986); 188 Ill. 2d R. 412, Committee Comments), and the same standard applies under both Rule 412(c) and *Brady* (see *People v. Lann*, 194 Ill. App. 3d 623, 632 (1990)), our analysis under *Brady* necessarily would apply to Rule 412(c).

■ Under *Brady*, the State has an affirmative duty to disclose evidence favorable to a defendant. *People v. Coleman*, 183 Ill. 2d 366, 391 (1998). Regardless of a request by a defendant, favorable evidence is material, and constitutional error results from its suppression by the State, if there is a reasonable probability that had the evidence been disclosed the result of the proceeding would have been different. *Coleman*, 183 Ill. 2d at 393, citing *United States v. Bagley*, 473 U.S. 667, 682, 87 L. Ed. 2d 481, 494, 105 S. Ct. 3375, 3383 (1985). Put another way, the materiality inquiry depends on whether the suppressed evidence undermines confidence in the outcome of the trial. *Coleman*, 183 Ill. 2d at 393, citing *Kyles v. Whitley*, 514 U.S. 419, 434, 131 L. Ed. 2d 490, 506, 115 S. Ct. 1555, 1566 (1995).

■ Here, defendant has not shown the failure to disclose the fact that Mehus picked another photograph out of the photo lineup before

selecting defendant's photograph undermines the confidence in the outcome of her trial. Defendant had ample opportunity to cross-examine Mehus concerning his initial selection of the other photograph. She was also able to highlight the selection of the other photograph during closing argument. Thus, she had a meaningful opportunity to attack the identification by Mehus. Defendant has not pointed to any other advantage she might have had as to cross-examination of Mehus or bringing the initial selection of the other photograph to the jury's attention if the State had disclosed the fact to her earlier.

Defendant also contends that the State's failure to disclose undermines the confidence in the verdict because had she known that Mehus had initially selected a photograph other than hers she could have attempted to identify the other person and develop evidence that the other person was the perpetrator. This contention is tenuous at best.

The trial court was open to granting a short continuance to allow defendant's attorney an opportunity to determine the identity of the person shown in the photograph first selected by Mehus. Foregoing this opportunity, defendant's attorney insisted on a dismissal of the charge. We find it rather disingenuous for defendant now to complain that the State's miscue deprived her of an opportunity to gather evidence that someone other than herself committed the theft. Defendant argued that a short continuance would not allow her enough time to investigate the other person. A short continuance, however, most likely would have allowed defendant at least to determine whether the identity of the other person could be ascertained. The record does not contain the photocopy of the lineup. Because the photocopy was of poor quality and the officer who conducted the lineup was no longer available, it was possible that the identity of the other person could not have been determined. After a short continuance, defendant could have returned to court with a progress report and provided the court with additional information about whether a longer continuance was warranted. Moreover, the court allowed defendant to cross-examine Mehus extensively about the pretrial identification. Because defendant rejected a continuance and elected to proceed with the trial after the court denied her motion to dismiss, we are left to speculate about the significance of any additional information that might have been discovered.

Mehus's testimony provided compelling evidence against defendant. While he was the only State witness, he positively identified defendant in court. Also, he had ample opportunity to observe the shoplifter both inside and outside the store. He looked at her on two

occasions in the store for three seconds each as well as watched her as she exited the store and went to her vehicle. He also escorted her back into the store after confronting her in the parking lot. This extensive opportunity to observe the shoplifter strengthens Mehus's in-court identification.

Also, we cannot say that the fact of the initial misidentification strongly favored defendant. Although Mehus initially selected someone else from the photo lineup, he explained how he selected the first photo after viewing the lineup for about three seconds. After taking more time, he selected defendant's photograph. He persisted in his identification of defendant and testified that no one tried to influence his identification.

In light of the strength of Mehus's in-court identification, it has not been shown that had defendant known about Mehus's initial selection of another photograph in the photo lineup there was a reasonable probability that the outcome of her trial would have been different. Thus, we hold the materiality of the State's lack of disclosure as required by *Brady* has not been established.

■ Defendant's second contention on appeal is that when it imposed the sentence, the trial court improperly considered a mitigating factor as an aggravating factor. The trial court may consider in mitigation that the imprisonment of the defendant would entail excessive hardship to her dependents. 730 ILCS 5/5—5—3.1(a)(11) (West 2000). Defendant claims that the trial court improperly rejected this factor and instead faulted her for choosing to put her daughter in jeopardy of such hardship by committing another offense.

Although defendant did not object to the trial court's comments during the sentencing hearing and did not move to reconsider the sentence, we may review as plain error a court's reliance on an improper factor in aggravation in sentencing because it affects a defendant's fundamental right to liberty. *People v. Bennett*, 329 Ill. App. 3d 502, 518 (2002).

A reviewing court will disturb a sentence only if the trial court abused its discretion. *People v. Rogers*, 197 Ill. 2d 216, 223 (2001). The trial court cannot ignore pertinent mitigating factors. *People v. Burnette*, 325 Ill. App. 3d 792, 808-09 (2001). It is well settled, however, that a trial court is not limited to considering statutory aggravating factors but may consider any factor consistent with the statute that would tend to aggravate the offense. *People v. Helm*, 282 Ill. App. 3d 32, 34 (1996); *People v. Williams*, 275 Ill. App. 3d 249, 258 (1995). Moreover, a new sentencing hearing is not required where the record reveals that the weight placed on an allegedly improper factor was so insignificant that it did not lead to a greater sentence. *People v. Knowles*, 315 Ill. App. 3d 600, 602 (2000).

When the challenged comments here are read in context, it is clear that the trial court focused on defendant's recidivism instead of summarily rejecting a statutory mitigating factor. A careful reading of the trial court's comments reveals that it did not rely on a mitigating factor in aggravation. While it referred to defendant being sentenced to 90 days in jail when her daughter was 15 years old, it did so merely to exemplify that defendant had not been rehabilitated or deterred by such a situation and that a sentence of less duration would likely be ineffective. Further, although the circumstances of defendant leaving a 15-year-old dependent child would have qualified as a mitigating factor in the earlier case in which she was sentenced to 90 days in jail, it was not relevant to mitigation in the present case. For these reasons, we conclude that defendant has failed to demonstrate that the trial court abused its discretion.

The judgment of the circuit court of Lake County is affirmed.

Affirmed.

McLAREN and BYRNE, JJ., concur.