THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES CURTIS, Defendant-Appellant.

First District (4th Division) No. 1—03—1542

Opinion filed December 9, 2004.—Rehearing denied January 3, 2005.

314

Michael J. Pelletier and David W. Gleicher, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Mary L. Boland and Stephanie A. Buck, Assistant State's Attorneys, of counsel), for the People.

JUSTICE THEIS delivered the opinion of the court:

Following a jury trial, defendant James Curtis was convicted of aggravated stalking, telephone harassment, and violation of an order of protection. The trial court then sentenced him to extended prison terms of 10 years for aggravated stalking, 6 years for telephone harassment, and 6 years for violation of an order of protection, to run concurrently. On appeal, defendant contends that (1) he was not proven guilty of aggravated stalking beyond a reasonable doubt; (2) the trial court erred in responding to a question posed by the jury and gave an incorrect response; (3) the trial court erred in admitting the victim's prior consistent statements, which improperly bolstered her credibility; (4) the trial court erroneously considered a factor inherent in the offense of aggravated stalking in sentencing him to 10 years' imprisonment for that offense; and (5) his conviction for violation of an order of protection should be vacated because it violates the one-act, one-crime doctrine and is a lesser-included offense of aggravated stalking. For the following reasons, we affirm in part and vacate in part.

At trial, Deborah Chester testified that she and defendant dated for over three years until she ended their relationship and he moved out of her home in March 2001. During their relationship, defendant

worked for ADT Security and ADT had installed a home security system at Chester's house. Their daughter, Jasmine Curtis, was born in January 2000.

The parties stipulated that on February 28, 2002, defendant was found guilty of a violation of an order of protection, under case number 2001—1448636. The parties further stipulated that on February 28, 2002, defendant was served in open court with an order of protection numbered 02—185064. The record reflects that this order of protection prohibited defendant from, *inter alia*, stalking Chester, contacting her by any means, and entering Chester's house.

Chester also testified that on March 1, 2002, at 1:46 a.m., defendant called her at home and told her that he had pled guilty and he was "out." He also stated that "the next time he go [*sic*] back to jail, it would be for something more serious." After she hung up the telephone, Chester called the police. When Chester returned home from work on April 28, 2002, she noticed that her furniture had been slashed. She subsequently noticed that a set of keys belonging to her children's live-in baby-sitter, Jeneen Edwards, was missing, along with three leather jackets, jewelry, and some of Chester's court paperwork. She changed her locks shortly thereafter.

Chester testified that on April 30, 2002, between 9:30 and 10 a.m., she was home alone when defendant called her and said that she had "24 hours to allow him to see his daughter, or he'll kill [Chester]." Chester testified that she was scared and immediately went to the police station to report the incident and stated that she "figured this man would come for me, and I was trying to figure out what can we do to help me." At approximately 3 p.m. that afternoon, defendant called Chester again and told her that if she allowed him to see Jasmine, he would return the three jackets he had stolen from her house. Chester agreed to meet with him, but did not designate a time and place for the meeting. She then called the police. With Detectives Jasica and Devries, Chester arranged a plan to allow defendant to designate the time and place for the meeting. Defendant called again that afternoon and told Chester to meet him at the intersection at 95th and Lafayette Streets in 15 minutes and she agreed to do so. Chester and the detectives drove to the designated area in separate cars. Shortly after Chester parked on Lafayette, she saw defendant exit a van on the 95th Street side of the street. Defendant crossed the street and started walking toward her. He waved at her and motioned for her to come to him. He carried a backpack, but did not have the jackets with him. Chester remained in her car until he came closer to her, and then placed her car in reverse, which was the sign to the detectives that defendant was approaching. Chester then drove away from the scene.

Jeneen Edwards testified that on March 1, 2002, defendant came to Chester's home at about 4 p.m. Edwards refused to open the door because of the order of protection. Defendant repeatedly asked where Chester was, but Edwards refused to give him that information and told defendant that she was going to call the police. After speaking to the police, she noticed that defendant had left and she then saw him walking northbound on Wentworth Avenue. When the police arrived at Chester's home shortly thereafter, Edwards described defendant and told them which way he went. Approximately five minutes later, the police returned with defendant.

Edwards further testified that on April 28, 2002, she set the security alarm after Chester left for work at approximately 5 a.m. and then went to sleep. Several hours later, she noticed that the living and dining room furniture had been slashed and called the police. Edwards subsequently realized that her keys and leather jacket were missing. On cross-examination, Edwards testified that she did not see defendant inside Chester's home on April 28, 2002.

Officer Joseph Kwiatkowski testified that on March 1, 2002, at about 4:15 p.m., he was dispatched to Chester's home. Edwards told him that defendant had come to the home in violation of an order of protection. Shortly thereafter, Kwiatkowski and his partners found defendant walking approximately five blocks from Chester's house. After verifying defendant's identity with Edwards, Kwiatkowski placed defendant under arrest.

Detective Jasica testified that at about 4 p.m. on April 30, 2002, he and his partners were dispatched to Chester's home to investigate ongoing domestic and telephone threats. After Chester informed them of what had transpired, they developed a plan whereby the police would intercept a meeting between defendant and Chester. Chester would park at the meeting area designated by defendant, wait for defendant to arrive, and, upon seeing him, put her car in reverse and drive away from the area. After defendant called again, Chester told Jasica that defendant wanted to meet her at Lafayette and 95th in 15 minutes. Once at the designated area, Jasica saw defendant exit the passenger side of a van at that intersection, look in Chester's direction and wave at her. Defendant then began to walk toward Chester and motioned for her to come over to him. Chester put her car in reverse and drove away from the area. Jasica then placed defendant under arrest.

On cross-examination, Jasica indicated that defendant had a backpack with him when he was arrested, but that he could not recall what items were contained therein. On redirect, Jasica testified that on April 30, 2002, Chester told him that defendant had threatened to

kill her and told her he would return the items he stole from her home if she would meet with him.

Officer Dorinda Rodgers testified that on April 30, 2002, she was working at the front desk in the police station when Chester arrived. Rodgers testified that Chester was shaking, "very upset" and "hysterical" when she made a report.

The jury found defendant not guilty of residential burglary and criminal damage to property, but guilty of aggravated stalking, telephone harassment, and violation of an order of protection. After denying defendant's motion for a new trial, the trial court sentenced him to concurrent extended prison terms of 10 years for aggravated stalking, 6 years for telephone harassment, and 6 years for violation of an order of protection. After the court denied his motion to reconsider his sentence, defendant filed this timely appeal.

Defendant first argues that the State failed to prove him guilty of aggravated stalking beyond a reasonable doubt. He contends that the State did not prove that he placed Chester under "surveillance" on two occasions, as that term is defined in the statute.

■ In reviewing the sufficiency of the evidence, our inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *People v. Valentin*, 347 Ill. App. 3d 946, 951, 808 N.E.2d 1056, 1060 (2004). The trier of fact is responsible for determining the credibility of the witnesses, the weight to be given their testimony, and reasonable inferences to be drawn from the evidence presented. *Valentin*, 347 Ill. App. 3d at 951, 808 N.E.2d at 1061-62. A person commits the offense of aggravated stalking when he, in conjunction with committing the offense of stalking, also "violates *** an order of protection." 720 ILCS 5/12—7.4(a)(3) (West 2002). A person commits the crime of stalking when he:

"knowingly and without lawful justification, on at least 2 separate occasions follows another person or places the person under surveillance or any combination thereof and:

(1) at any time transmits a threat of immediate or future bodily harm *** and the threat is directed towards that person or a family member." 720 ILCS 5/12—7.3(a)(1) (West 2002).

That statute also provides:

"[A] defendant 'places a person under surveillance' by remaining present outside the person's school, place of employment, vehicle, other place occupied by the person, or residence other than the residence of the defendant." 720 ILCS 5/12—7.3(d) (West 2002).

■ In this case, defendant challenges only the element of "plac-[ing] a person under surveillance" and does not contest any other ele-

ments of aggravated stalking. Additionally, defendant concedes that his actions on March 1, 2002, constituted one instance of surveillance. He argues only that his actions on April 30, 2002, did not constitute surveillance because he did not "remain present" outside Chester's vehicle and his presence was not "uninvited."

We find *People v. Daniel*, 283 Ill. App. 3d 1003, 670 N.E.2d 861 (1996), instructive. In *Daniel*, the defendant challenged his aggravated stalking conviction, contending that he did not remain present outside the victim's place of employment. The evidence revealed that defendant entered the victim's workplace, threatened her and ranted and raged for approximately 15 minutes. When he left the building, the defendant crossed the street, walked to the rear of the victim's car, hit the window, and then departed. The court found two distinct bases to uphold his conviction based on the defendant's actions both inside the currency exchange (her place of employment) and outside the building. *Daniel*, 283 Ill. App. 3d at 1006 n.1, 670 N.E.2d at 864 n.1. The court found that the defendant violated the stalking statute by " 'remaining outside' the currency exchange building—even for a brief period—because of the nature of his actions, actions that the stalking statute was designed to prohibit and that established that he was no mere passerby." *Daniel*, 283 Ill. App. 3d at 1006 n.1, 670 N.E.2d at 864 n.1. Additionally, the *Daniel* court discerned

> "no statutory intent to set a minimum amount of time a defendant must remain in the vicinity of his victim's building before coming within the ambit of the stalking statute. Thus, although 'remain' has a temporal connotation, there is no basis for concluding that a defendant must stop, stay, or wait for a set period of time before his behavior is deemed to be surveillance under the stalking statute." *Daniel*, 283 Ill. App. 3d at 1008, 670 N.E.2d at 865.

This court also stated that "[a]lthough this is not the paradigmatic case where a stalker lies in wait for his victim, there is no basis for concluding that the legislature meant to exempt this sort of conduct from the stalking statute." *Daniel*, 283 Ill. App. 3d at 1009, 670 N.E.2d at 865. Thus, this court rejected the defendant's argument and affirmed his convictions.

We agree with *Daniel* that there was no minimum period of time that defendant was required to remain present outside Chester's car or that he was required to stop, stay or wait for a set period of time outside the car in order for his actions to constitute surveillance. Ultimately, the question of whether a particular set of circumstances constitutes "surveillance" as defined in the statute is a question of fact for the jury. See *People v. Bailey*, 167 Ill. 2d 210, 229, 657 N.E.2d 953, 963 (1995) ("[w]hether a person has maintained sufficient visual

or physical proximity to fall within the purview of the stalking statute will depend on a variety of factors in each case," which are "appropriate issues for the trier of fact"). While defendant did not need to remain present for any set amount of time, the jury was free to take this brief period into consideration when determining whether defendant's actions constituted surveillance. Thus, it was for the jury to decide, based on all of the facts in this case, whether defendant's actions constituted "surveillance."

Although this may not be a case where the stalker laid in wait for his victim, we agree with *Daniel* that such incidents are not the only actions proscribed by the statute and that there is no basis to conclude that the legislature meant to exempt any other conduct from the purview of the stalking statute. The legislature enacted this statute to prevent violent attacks on victims by prohibiting the conduct that precedes them and by allowing the police to act before the victim is actually injured. *Bailey*, 167 Ill. 2d at 224, 657 N.E.2d at 960; *People v. Nakajima*, 294 Ill. App. 3d 809, 817, 691 N.E.2d 153, 158 (1998). The legislature additionally intended to prevent the terror, intimidation, and apprehension produced by harassing actions. *Nakajima*, 294 Ill. App. 3d at 817, 691 N.E.2d at 158. Moreover, legislative intent dictates that this statute be given a liberal construction. *Daniel*, 283 Ill. App. 3d at 1005, 670 N.E.2d at 863. Under the stalking statute, the police need not wait for the stalker to reach the victim in order to act. By specifically not defining a time period in the statute for a person to "remain present" in order for his actions to constitute surveillance, the legislature broadened the reach of the stalking statute to encompass a variety of behaviors, including defendant's actions in this case.

Additionally, we find that defendant's conduct was not the "sort of innocent behavior that courts must protect from an overly broad interpretation of the stalking statute." *Daniel*, 283 Ill. App. 3d at 1009, 670 N.E.2d at 865. Here, defendant was not a "mere passerby" on April 30. He had previously called Chester when he was released from jail and warned her that the next time he returned to jail, it would be for "something more serious." Later that day, defendant went to Chester's house and repeatedly asked Chester's baby-sitter where Chester was, leaving only when Edwards threatened to call the police. Additionally, there was evidence that Chester's house was broken into, her furniture was destroyed and some of her belongings were stolen on April 28. Two days later, defendant called Chester and threatened to kill her if she did not allow him to see their daughter. Chester was scared and worried that he would "come for [her]" and sought help from the police. Officer Rodgers testified that Chester was

shaking, "very upset" and "hysterical" when she made the police report. Defendant called again that day and told Chester that he would return the leather jackets he stole from her house if she let him see their daughter, and he called later to dictate the time and place of this meeting. With police protection, Chester drove to the intersection where defendant waved at her, walked toward her car and motioned for her to come to him. When he arrived, defendant did not have the jackets with him. Based on all of these circumstances and after viewing the evidence in the light most favorable to the State, we find that the jury could have found that defendant's actions on April 30 constituted surveillance.

Defendant urges us not to rely on *Daniel*, arguing that its statements that the concept of surveillance has no time requirement are mere *dicta*. We disagree and continue to follow *Daniel*. These statements were not *dicta*; rather, the court upheld the defendant's conviction on two separate and distinct bases based on the defendant's conduct both inside and outside the currency exchange. The fact that the court gave two bases for its holding does not mean that one such basis was merely *dicta*. Additionally, defendant attacks *Daniel*, contending that it misread *Bailey* because *Bailey* "went into greater detail regarding the definition of 'surveillance.' " However, after reviewing both *Daniel* and *Bailey*, we find that *Daniel* is consistent with *Bailey* and reject defendant's argument.

Defendant also argues that his presence near Chester's car on April 30, 2002, was not "uninvited," and thus, his actions could not constitute surveillance. However, the stalking statute makes no mention of whether the surveillance has to be uninvited by the victim. This court "cannot read words into a statute that are not there." *Chicago Tribune Co. v. Board of Education of the City of Chicago*, 332 Ill. App. 3d 60, 67, 773 N.E.2d 674, 680 (2002). Further, defendant cites no cases requiring the defendant's actions to be uninvited. Thus, we reject defendant's argument and find that the State proved him guilty of aggravated stalking beyond a reasonable doubt.

■ Defendant next contends that the trial court erred in providing a response to the jurors' question regarding the term "remain present." He argues that a response was unnecessary because the jury instruction defining surveillance was readily understandable and that, with its response, the trial court effectively directed the jury to find defendant guilty of aggravated stalking. Additionally, defendant contends that the court's response misstated the law on surveillance.

Before deliberating, the jury was given an instruction defining the phrase "places a person under surveillance" as that "the defendant remained present outside the vehicle of Deborah Chester or a residence

other than the residence of the defendant." During deliberations, the jury sent out a note asking: "In defining 'surveillance,' is there a time duration and/or distance limitation to the phrase 'remain present outside of vehicle?' " The State proposed that the court respond to the question with language from *Daniel*. Over defense counsel's objection, the trial court sent the jury the following response:

"That with reference to the phrase remain present, there is no legal requirement that the defendant must stop, stay, or wait for a minimum or maximum amount of time outside of a vehicle before his behavior may be found to be surveillance under the stalking statute.

However, you should consider this response to your question in conjunction with the definition instruction you received as to the phrase 'places a person under surveillance.' "

In addressing this issue, we must first determine whether the court erred in answering the question. The general rule when a trial court is presented with a question from the jury is that the court has a duty to provide instruction when the jury has posed an explicit question or requested clarification on a point of law arising from facts about which there is doubt or confusion. *People v. Millsap*, 189 Ill. 2d 155, 160, 724 N.E.2d 942, 945 (2000). Nevertheless, a trial court may exercise its discretion to refrain from answering a jury's question under appropriate circumstances, including when the instructions are readily understandable and sufficiently explain the relevant law, where further instructions would serve no useful purpose or would potentially mislead the jury, when the jury's inquiry involves a question of fact, or where the giving of an answer would cause the court to express an opinion that would likely direct a verdict one way or the other. *Millsap*, 189 Ill. 2d at 161, 724 N.E.2d at 945.

We note that at trial, defense counsel agreed with the State and the trial court that this note presented a question of law. Thus, defendant is barred from arguing now on appeal that the jury's question instead presented a question of fact. *People v. Thompson*, 337 Ill. App. 3d 849, 856, 787 N.E.2d 858, 865 (2003). While defendant states in his reply brief that the "plain error rule applies" here to circumvent the waiver rule, he makes no argument as to that rule's application to the facts of this case and we decline to address it.

First, we find that the trial court had a duty to answer the jury's question. The jury's note requested a definition of a specific phrase contained in a jury instruction, "remain present outside of vehicle," and, thus, the question was explicit. *People v. Gray*, 346 Ill. App. 3d 989, 993, 806 N.E.2d 753, 757 (2004). While the determination of whether the defendant's actions constitute surveillance is a question

of fact for the jury, the definitions of a phrase within a jury instruction present questions of law. See *Gray*, 346 Ill. App. 3d at 993, 806 N.E.2d at 757. Finally, the jury's question requested clarification on a specific point of law—the definition of "remain present"—indicating its confusion on the issue. Therefore, the trial court had a duty to answer the jury's question.

Defendant contends that the court did not have to provide any response because the jury instruction defining "surveillance" was "readily understandable and sufficiently explain[ed] the relevant law." In discussing whether to answer the question, defense counsel argued that the jury had already been given an instruction on the definition of surveillance and that the court should refer the jurors to this instruction. In rejecting defense counsel's argument and in deciding to answer the question, the court stated that there was "confusion in terms of [how] the law should be applied ***, and I think I have an obligation to clarify the question in their minds as best I can." By rejecting defense counsel's argument, the court implicitly rejected the premise that the instruction the jury received defining surveillance was readily understandable and sufficiently explained the relevant law. Additionally, "[t]he very fact the jury asked the question shows at least some jurors did not find the instructions clear as applied to the facts of the case." *People v. Comage*, 303 Ill. App. 3d 269, 273, 709 N.E.2d 244, 247 (1999). Thus, the court properly provided a response to the jury's question.

Moreover, we reject defendant's contention that the trial court's response "intruded upon the fact-finding function of the jury and, in essence, directed the guilty verdict." In answering the question, the court simply provided a definition of the phrase "remain present outside the vehicle" based on valid case law and did not apply that definition to the evidence or instruct the jury on how to do so. See *Gray*, 346 Ill. App. 3d at 993, 806 N.E.2d at 757. Because the court defined the phrase without reference to any particular facts of this case, its answer was purely legal. *Gray*, 346 Ill. App. 3d at 993, 806 N.E.2d at 757. "It remained the jury's task to apply that law to the evidence and to determine defendant's guilt." *Gray*, 346 Ill. App. 3d at 993, 806 N.E.2d at 757.

We find defendant's cited case, *People v. Lee*, 342 Ill. App. 3d 37, 795 N.E.2d 751 (2003), distinguishable. In *Lee*, the jury asked " 'Can we have clarification on aid and abet? If not doing anything at all, is this aiding?' " and " 'What constitutes "legally responsible"? For example, one victim and two people in the room. One person is committing the crime and second person is observing all or part of the crime. Is the second person legally responsible, and can they be

charged with the crime and convicted for first degree murder?' " *Lee*, 342 Ill. App. 3d at 54, 795 N.E.2d at 764. The court responded only that the jurors had all of the instructions on the law and told them to continue deliberating. In affirming, this court found that these questions presented factual hypotheticals specific to that case such that any answer to these questions would have required the court to indirectly comment on the facts and the evidence. *Lee*, 342 Ill. App. 3d at 55, 795 N.E.2d at 765. In the present case, however, the jury's question sought solely a legal definition of a specific term and did not include any factual hypothetical. Additionally, the court's answer did not comment on the facts or evidence in this case. Thus, the trial court's response did not interfere with the fact-finding function of the jury.

Our next inquiry is whether the trial court misstated the law in its response. When the court answers a jury's question, it must not misstate the law. *Gray*, 346 Ill. App. 3d at 994, 806 N.E.2d at 757. We review this issue *de novo*. *Gray*, 346 Ill. App. 3d at 994, 806 N.E.2d at 757. Here, in answering the jury's question, the court relied on *Daniel*, a First District Appellate Court case directly on point. As discussed above, that court addressed the specific phrase at issue here, "remain present," and whether that phrase included a time element. The *Daniel* court concluded that there was no minimum amount of time a defendant must remain in the vicinity of the victim's building and although "remain" had a temporal connotation, there was no basis to conclude that a defendant must stop, stay or wait for a set period of time for his actions to constitute surveillance under the stalking statute. *Daniel*, 283 Ill. App. 3d at 1008, 670 N.E.2d at 865. In fashioning its answer, the trial court relied on this language and instructed the jury that there was no legal requirement that the defendant stop, stay or wait for a minimum or maximum amount of time outside the vehicle before his behavior constituted surveillance. Additionally, the court told the jury to consider this response in conjunction with the jury instruction defining "places a person under surveillance." Based on the language in *Daniel*, the trial court correctly stated the law in its response to the jury's question. Accordingly, we reject defendant's argument.

■ Defendant next argues that the trial court erred in allowing the State to admit Chester's prior consistent statements through Detective Jasica's testimony, which improperly bolstered Chester's credibility. He cites instances in Jasica's testimony where Jasica testified to what Chester told him of her conversations with defendant. However, defendant concedes that he failed to object to this testimony at trial or include this issue in his posttrial motion. Accordingly, this

issue is waived. *People v. Harvey*, 211 Ill. 2d 368, 385, 813 N.E.2d 181, 191 (2004). Defendant urges us to review this issue under the plain error doctrine, a narrow and limited exception to the waiver rule. That doctrine "allows a reviewing court to consider a trial error not properly preserved when '(1) the evidence in a criminal case is closely balanced or (2) where the error is so fundamental and of such magnitude that the accused was denied a right to a fair trial.' " *Harvey*, 211 Ill. 2d at 387, 813 N.E.2d at 193, quoting *People v. Byron*, 164 Ill. 2d 279, 293, 647 N.E.2d 946, 953 (1995).

First, defendant argues that the evidence was closely balanced as to the charge of aggravated stalking, "specifically, whether there were two acts of surveillance." We disagree. First, we held above that there is no minimum amount of time a defendant must be present outside the victim's car or house in order for him to "remain present" under the statutory definition of surveillance. Second, defendant concedes on appeal that he committed the first act of surveillance on March 1, 2002. Further, the evidence was not closely balanced as to the second act of surveillance. As discussed above, Chester testified that defendant had previously called her when he was out of jail and warned her that the next time he returned to jail, it would be for "something more serious." Chester reported this threat to the police. Edwards testified to defendant's first act of surveillance when he came to Chester's house and repeatedly asked where Chester was, leaving only when Edwards threatened to call the police. Additionally, there was evidence that Chester's house had been broken into, her furniture was destroyed and some of her belongings were stolen. Chester testified to defendant's threats to kill her and stated that she was scared and worried that he would "come for [her]." Moreover, Officer Rodgers testified that Chester was shaking, "very upset" and "hysterical" when she made the police report concerning these threats on April 30, 2002, the date of the second act of surveillance. Both Chester and Detective Jasica testified as to the events on April 30 that constituted surveillance, namely, that defendant exited a van, waved at Chester, walked toward Chester's car and motioned for her to come to him. Thus, the evidence was not closely balanced.

Defendant cannot meet the second prong of the plain error doctrine. Assuming *arguendo* that the admission of Chester's prior consistent statements was error because it improperly bolstered her testimony, the admission of these statements does not implicate a substantial right. *People v. Daniels*, 331 Ill. App. 3d 380, 388-89, 770 N.E.2d 1143, 1151 (2002). Thus, defendant does not meet either prong of the plain error doctrine and we decline to address this issue.

Defendant also contends that the State improperly referred to Ja-

sica's testimony concerning Chester's prior consistent statements during closing argument, further compounding their prejudicial effect. However, defendant neither objected to these comments at trial nor included them in his posttrial motion. Accordingly, this issue is waived. *Harvey*, 211 Ill. 2d at 385, 813 N.E.2d at 191. Defendant again urges us to review this issue under the plain error doctrine. However, as discussed above, the evidence in this case was not closely balanced. Further, even if the prosecutor's closing argument was improper, it does not affect a substantial right. *People v. Dibble*, 317 Ill. App. 3d 252, 259, 739 N.E.2d 578, 583 (2000). Thus, we decline to address this argument.

■ Defendant next argues that this case should be remanded for a new sentencing hearing because the trial court relied on an improper factor in determining his sentence. He contends that the court erred in considering his conviction for violation of an order of protection, a factor inherent in the offense of aggravated stalking, in sentencing him to a 10-year prison term for aggravated stalking.

At the sentencing hearing, Chester testified that she received the first order of protection against defendant on March 26, 2001, because defendant made bomb threats against her house. On the evening of September 26, 2001, while the order of protection was in effect, Chester looked outside her house and saw defendant inside her car. He then threatened to kill her if she called the police and broke the glass in the front door of her house. On the evening of September 28, 2001, Chester saw defendant standing in her yard. She called the police and defendant was arrested. In October 2001, defendant called her over 100 times from jail at her home and at work, threatening her that if she appeared in court against him, he would hurt or kill her. Chester reported these incidents to the police and changed her phone number. On December 21, 2001, at 8:30 p.m., while an order of protection was in effect, she again saw defendant in the backyard of her house. On December 31, 2001, Chester noticed defendant standing near her car while it was parked at her place of employment. Defendant then came to the window of her work and banged on it, asking her to come outside. Later that evening, Chester again saw defendant in her backyard. She watched as defendant hit the windshield of her car and flattened her tires and then called the police. On January 2, 2002, defendant called her and threatened to hurt her, stating that he could "get to [her] any time he wanted." On January 19 and March 19, 2002, he called and warned her not to go to court. Chester testified that because of defendant's harassment, she had lost two jobs and was forced to move, her children were scared to go to school, she had lost hair and weight, she was constantly under stress and she stated that

it was "unbearable" "[b]ecause we know that he is not going to give up."

The State noted in aggravation that defendant had several prior felony convictions for armed robbery, burglary, and possession of a controlled substance. Defendant also had three convictions for violation of an order of protection and an assault conviction which resulted in an order of protection. In response, defendant stated that he was "not guilty" and wanted "to go on with [his] life and further [his] education and move on with [his] life and [his] children *** and continue to do what is necessary to make sure that [he] live[s] a law-abiding life."

In support of his argument that the court improperly considered the violation of the order of protection, defendant cites one sentence from the court's 12½-page discussion during the sentencing hearing where the court stated:

"Suffice it to say that with regard to the facts that were presented in this case, there is a certain aggravation to them, insofar as that there was a valid order of protection in existence at the time that these actions occurred."

In this statement, the court is referring to the order of protection that defendant violated in this case, a factor that is inherent in the offense of aggravated stalking. We agree with defendant that the trial court's reliance on this factor was improper as a double enhancement, given that the violation of an order of protection was an element of the charge of aggravated stalking. *People v. Johnson*, 347 Ill. App. 3d 570, 576, 807 N.E.2d 1171, 1176 (2004).

However, reliance on an improper factor in aggravation does not always necessitate remandment for resentencing. *Johnson*, 347 Ill. App. 3d at 576, 807 N.E.2d at 1176. When this court is unable to determine the weight given to an improperly considered factor, the cause must be remanded for resentencing. *Johnson*, 347 Ill. App. 3d at 576, 807 N.E.2d at 1176-77. Nevertheless, a reviewing court should not focus on a few words or statements of the trial court, but should make its decision based on the record as a whole. *People v. Carter*, 344 Ill. App. 3d 663, 673, 801 N.E.2d 1163, 1173 (2003). Where it can be determined from the record that the weight placed on the improperly considered aggravating factor was so insignificant that it did not lead to a greater sentence, remandment is not required. *People v. Ryan*, 336 Ill. App. 3d 268, 274, 783 N.E.2d 187, 192 (2003).

Here, the record reveals that the trial court did not place much significance on the fact that defendant violated this order of protection and such reliance was so insignificant that it did not lead to a greater sentence. In sentencing defendant, the court discussed its

reasoning in almost 13 pages of the transcript. The court considered the statutory factors in mitigation and aggravation, as well as the presentence investigation report, the arguments of counsel, defendant's statement and Chester's testimony. The court considered that "there were also valid orders of protection that were apparently in existence" as mentioned in Chester's testimony. The court found that defendant's actions in this case and in the numerous other incidents, which included the necessity of police involvement, damage to property, and threats, indicated that defendant was not able to control himself. The court then considered defendant's character and his potential for rehabilitation. The court stated that based on defendant's prior convictions, specifically the prior violations of orders of protections, coupled with the assault charge, drug convictions, burglary and armed robbery convictions, "at this point in time you still do pose a significant and real threat to Miss Chester." The court continued:

"[N]o one in this society should have to live their lives day by day *** under the umbrella or the cloud that, at any time, as your words have stated, that you could get to her at any time or kill her ***.

Clearly your actions have had your desired and intended effect of causing also physical injury to her that she says there was hair loss, loss of weight, severe stress. *** Miss Curtis [*sic*] essentially was terrorized at your hand so that she did not have what many other people expect and deserve in this country and that is the freedom to go about her business without fear of someone doing injury or harm or even causing her death.

* * *

*** [T]he probations that you have had, the jail times that you have had *** the penitentiary sentence you had, the orders of protection that you were convicted of, as well as the ones pending, have had absolutely no effect whatsoever in causing you to rehabilitate yourself, or to bring your actions in conformity with that which society expects.

So, at this point in time, I do believe until you address the demons that you have, Mr. Curtis, that you do pose a very significant risk to the safety of Miss Chester."

The court then sentenced him to an extended term of 10 years' imprisonment on the aggravated stalking charge. Based on this record, we find that the court's improper consideration of the violation of this order of protection had no significant effect on the sentence it imposed and reject defendant's argument.

■ Finally, defendant argues that his convictions and sentences for aggravated stalking and violation of an order of protection violate the

one-act, one-crime doctrine of *People v. King*, 66 Ill. 2d 551, 363 N.E.2d 838 (1977), because both convictions are predicated on the same act. He also contends that his conviction and sentence for violation of an order of protection must be vacated because it is a lesser-included offense of aggravated stalking. While defendant waived this issue by failing to raise it at trial or in his posttrial motion, we choose to address it under the plain error doctrine because it impacts his substantial rights. *Harvey*, 211 Ill. 2d at 389, 813 N.E.2d at 194.

A criminal defendant may not be convicted of multiple offenses when those offenses are all based on precisely the same physical act. *People v. King*, 66 Ill. 2d 551, 566, 363 N.E.2d 838, 844-45 (1977). In conducting a *King* analysis, this court first ascertains whether the defendant's conduct consisted of a single physical act or separate acts. *Harvey*, 211 Ill. 2d at 389, 813 N.E.2d at 194. An act is defined as " 'any overt or outward manifestation which will support a different offense.' " *People v. Schrader*, 353 Ill. App. 3d 684, 697 (2004), quoting *King*, 66 Ill. 2d at 566, 363 N.E.2d at 844-45. A person can be guilty of two offenses when a common act is part of both offenses. *People v. Rodriguez*, 169 Ill. 2d 183, 188, 661 N.E.2d 305, 308 (1996). If the court determines that the defendant committed multiple acts, the court then must decide whether any of the other offenses are lesser-included offenses. *Harvey*, 211 Ill. 2d at 389, 813 N.E.2d at 195. If any of the offenses are lesser-included, then multiple convictions are improper, but if none of the offenses are lesser-included offenses, then multiple convictions may be entered. *Harvey*, 211 Ill. 2d at 389-90, 813 N.E.2d at 195.

We must first look at the indictment and determine whether defendant's conduct consisted of separate acts or a single physical act. The indictment must indicate that the State intends to treat the defendant's conduct as separate acts. *Schrader*, 353 Ill. App. 3d at 697. Here, defendant was charged with one count of aggravated stalking which consisted of three acts committed by defendant: he placed Chester under surveillance on March 1, 2002, and again on April 30, 2002, and he "transmitted a threat to Deborah Chester on April 30, 2002 of future bodily harm, to wit: [he] threatened to kill" her. The sole count of a violation of an order of protection alleged one act by defendant: that he "telephoned Deborah Chester and threatened" her on April 30, 2002.[1]

---

[1]The record reflects that defendant was originally charged with three counts of violation of an order of protection for three different acts and under three different theories. However, the record also indicates that the State, prior to trial, nol-prossed two of these counts, leaving only the one count involving defendant's threatening telephone call to Chester on April 30.

In this case, we find that the offenses of aggravated stalking and a violation of an order of protection involve multiple acts. Aggravated stalking contains three separate acts by defendant whereas the violation of an order of protection involves only one. Although these offenses have in common the act of defendant threatening Chester on April 30, 2002, as long as there are multiple acts, their interrelationship does not preclude multiple convictions. *Rodriguez*, 169 Ill. 2d at 189, 661 N.E.2d at 308.

Next, we must decide whether either offense is a lesser-included offense of the other. We use the charging-instrument approach in identifying lesser-included offenses. *People v. Flynn*, 341 Ill. App. 3d 813, 831, 792 N.E.2d 527, 542 (2003). To qualify as a lesser-included offense under this approach, the instrument charging the greater offense must, at a minimum, set out the main outline of the lesser offense. *Schrader*, 353 Ill. App. 3d at 699. The indictments here charged defendant with committing aggravated stalking in that he committed the three acts as discussed above and "in conjunction with committing the offense of stalking James Curtis violated an order of protection, under case number 2002—1185064." The sole count of a violation of an order of protection charged that defendant "knowingly or intentionally, committed an act which was prohibited by a valid order of protection *** under case number 2002—1185064." The violation-of-the-order-of-protection conviction was inherent in the offense of aggravated stalking and was the sole factor increasing a stalking charge to the aggravated stalking charge. Defendant could not have been convicted of aggravated stalking in this case unless he was first convicted of a violation of an order of protection. Thus, because the indictment charging the greater offense sets out the main outline of the lesser offense in that it requires proof that defendant violated an order of protection, the lesser offense cannot stand. *Flynn*, 341 Ill. App. 3d at 831, 792 N.E.2d at 542. Accordingly, we vacate defendant's conviction and sentence for violation of an order of protection.

For the foregoing reasons, we affirm defendant's convictions and sentences for aggravated stalking and telephone harassment and vacate his conviction and sentence for violation of an order of protection.

Affirmed in part; vacated in part.

GREIMAN and QUINN, JJ., concur.